Kenneth Lee THIRY, Appellant,

v.

ARMSTRONG WORLD INDUSTRIES, et al., Appellees.

No. 57815.

Supreme Court of Oklahoma.

March 22, 1983.

Rehearing Denied April 18, 1983.

David L. Graven, Wolf & Wolf, Norman, for appellant.

Scott M. Rhodes, Huckaby, Fleming & Frailey, Oklahoma City, Mort G. Welch, Abowity & Welch, Oklahoma City, Michael W. Hinkle, Holloway, Dobson, Hudson & Bachman, Oklahoma City, submitted on behalf of all appellees.

13. *Guess v. Miner,* 130 Okl. 93, 265 P. 633, 634 [1928].

Clarence P. Green, Green, James, Williams & Elliott, Oklahoma City, for appellee Johns-Manville Sales Corp.

DOOLIN, Justice:

The United States District Court for the Western District of Oklahoma has certified two questions of law to the Supreme Court of the State of Oklahoma pursuant to the provisions of 20 O.S.Supp.1980 § 1601 et seq. As certified those questions are:

1. Is a plaintiff under Oklahoma law permitted to allege and prove exemplary and punitive damages as an element of damage in an alleged manufacturers' product liability case?

2. If so, what must be the character of evidence to submit the punitive or exemplary damages to the trier of fact (i.e., willful, wanton, reckless, intentional, etc.)?

An abridged statement of facts necessary to illustrate the nature of the controversy is embodied in the order of certification forwarded to this Court. Those facts disclose and plaintiff alleges he was seriously and permanently injured by the inhalation of insulation materials containing asbestos manufactured by the defendant, Armstrong World Industries, during the scope of his employment. He alleges his respiratory disease is asbestosis.

Plaintiff contends defendants' products were defective in that they failed to adequately warn of health hazards associated with the use of asbestos products. Plaintiff also contends that defendant had an obligation to test its products and remain abreast of the medical and scientific knowledge concerning hazards in the use of products.

Plaintiff seeks recovery of damages for alleged permanent disability and injury as a result of using defendants' products containing asbestos.

In addition, plaintiff alleges that defendants knew that exposure to asbestos would cause asbestosis or if defendants did not know such fact it was due to its gross omission, conscious indifference and utter disregard for persons exposed to the product. In view of such conscious indifference and gross disregard, plaintiff seeks to recover exemplary and punitive damages in such an amount as would deter defendants and others from such conscious indifference and utter disregard for the welfare of users of their products, which plaintiff alleges to be the sum of $1,000,000.00.

Defendants deny plaintiff's alleged respiratory problem is disabling or that it was caused by exposure and use of its products. Defendants deny plaintiff is disabled, if at all, by reason of alleged asbestosis injury and contends his disability results from other causes. Defendants allege the plaintiff was aware of the hazards of working with asbestos because he was aware and had been warned. Defendants further contend the cautions and instructions they did give were adequate. Finally, defendants assert the plaintiff is not entitled to prevail because he voluntarily assumed the risk of a known defect.

Recognizing the need to compensate consumers who are injured by a defective product marketed by a manufacturer, this court adopted the strict liability theory of manufacturers' products liability in the case of *Kirkland v. General Motors*.[1] By removing the negligence requirement for recovery, strict liability expands the legal consequences of fault to the "innocent" manufacturer of defective products.

But in the quest for developing a shield of protection for the consumer by abolishing privity and negligence requirements, the need for a sword was forgotten. So much attention was devoted to the questions of how *innocent* manufacturers should be liable for defects in their products that rules applying to the *highly blameworthy* manufacturer may have been forgotten.

In *Smith v. United States Gypsum Company*,[2] we stated:

"We leave for another day, the question of whether punitive damages may be re-

---

1. 521 P.2d 1353 (Okl.1974).

2. 612 P.2d 251 (Okl.1980).

covered in an action for manufacturers' products liability." [3]

Today is that day.

■ We hold that a plaintiff may allege and prove exemplary and punitive damages as an element of damage in an alleged manufacturers' product liability case. In doing so we compliment the "shield" of compensation provided by strict liability doctrine with a "sword" of punitive damages. But appropriate control must be exercised to prevent the awarding of *excessive* judgments. Since the primary purpose of punitive damages is to punish the defendant and deter similar wrongdoing in the future, the "sword" must be used to deter the wrongdoer, not kill him.

Unlike compensatory damages which are imposed for the benefit of the plaintiff, punitive damages are imposed by law on the theory of punishing the offender for the general benefit of society.[4] "Exemplary damages" are intended to restrain the transgressor and warn him and others against committing similar offenses in the future.[5]

■ A jury is authorized to "give damages for the sake of example, and by way of punishing the defendant" ... "in *any action* for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed." [6] Products liability clearly falls within the statutory scope of "any action" and is not within the contract limitation.

In its retributive role, punishment rectifies some of the negative effects of prior misconduct. The important role of punitive damages is the deterence of similar future misconduct.

In order to facilitate this purpose, a general standard of "reckless" disregard for safety of others must sufficiently give notice of the proscribed conduct. Manufac-

turers should have little difficulty determining whether specific acts fall within the scope of gross misconduct proscribed by the rule.

The manufacturer must also be able to make the product safer. Since the recovery of punitive damages requires a high degree of misconduct, the jury would necessarily have to conclude that the manufacturer was capable of preventing the accident.

To be an effective deterrent the manufacturer must perceive a likelihood of being severely punished. The availability of punitive damages should increase the discovery of offending manufacturers and their punishment by giving the victim additional financial incentive. A manufacturer who markets a defective product likely to cause only minor injuries would no longer feel confident that consumers would not litigate such uneconomical injuries.

It should not be profitable for a manufacturer to knowingly continue to market a defective product. Society indirectly subsidizes the manufacturer of the defective product when the manufacturer is not called on to pay for all the injuries caused by the defective product. Many times the defect is not apparent to the injured consumer. The defect may thus go undiscovered. This is particularly prevalent when the defect is an inadequate warning or design. Manufacturers attempt to shift the financial burden of accident costs onto the shoulders of society.

Manufacturers may also choose to market products with known defects because of the potential drop in sales caused by adequate warnings. It is not only the expense in affixing the warnings but the anticipation that consumers would be afraid to purchase the product that motivates manufacturers to choose to absorb ensuing injury claims.

The objectives of punitive damages can only be achieved if the blameworthy wrongdoers are punished. If manufacturers are

---

**3.** Id., n. 6, 255.

**4.** *Oden v. Russell,* 207 Okl. 570, 251 P.2d 184 (Okl.1953).

**5.** *Main v. Levine,* 189 Okl. 564, 118 P.2d 252 (Okl.1941).

**6.** 23 O.S.1971, § 9.

permitted to insure against punitive damages, only minimal success could be achieved by their imposition. However, we ruled in *Dayton Hudson Corp. v. American Mutual Liability Ins. Co.*[7] that public policy against insurance protection for punitive damages does not preclude recovery from an insurer by an employer to whom willfulness or gross negligence of an employee became imputable under the doctrine of respondent superior. Such recovery is precluded only when the employer itself is directly guilty of "reckless disregard" of the safety of others in keeping an employee who was in fact "vicious" rather than merely "unfit" or "erratic." To hold the employer liable for the punitive acts of his employee, except in the latter circumstance, would do little to mend the ways of said employer.

There are considerable problems in measuring and controlling punitive damages, particularly in products liability cases, due to the difficulty of determining a proper sum to achieve the objectives of punishment and deterrence.

In order to achieve the goal of deterrence the penalty should increase as the magnitude of the hazard to the public increases. To discourage future misconduct, the penalty must directly attack the profit incentive generated by the marketing misconduct. The award should not only take away any profit realized from the single sale to the plaintiff, but also the profits realized from other such sales of the defective product to others.

■ The punishment function can only be achieved if the defendant is "stung" by the award. The penalty should therefore not only match the misconduct but of necessity should relate to the wealth of the wrongdoer.

The trial judge must exercise considerable control to avoid excessive punitive damage verdicts since the goal is to punish and deter, not bankrupt and destroy. This is particularly relevant in "mass disaster" cases where there is a significant risk that a manufacturer will be severely over-punished by numerous judgments.

Unlike the purpose of compensatory damages which are to benefit the *individual* plaintiff, punitive damages are imposed to benefit *society*. The plaintiff acts as a private attorney general to punish the culpable wrongdoer, thereby encouraging adherence to safety standards that benefit consumers generally. Punitive damages should not primarily be used to obtain a windfall for the individual plaintiff. Although an action for punitive damages must be brought by a plaintiff who has been actually injured by the defective product, it is not the plaintiff's individual right, but society's as a whole, that is being defended.

Most cases awarding punitive damages in Oklahoma have used such traditional phrases as "willful and wanton, malice, oppression, gross negligence, ill will, actual malice, or under circumstances amounting to fraud or oppression."[8] A more clearly defined and articulated standard is needed in the products liability context.

■ Punitive damages may be assessed against the manufacturer of a product injuring the plaintiff if the injury is attributable to conduct that reflects *reckless disregard* for the public safety.[9] "Reckless disregard" is not to be confused with inadvertent conduct. To meet this standard the manufacturer must either be aware of, or culpably indifferent to, an unnecessary risk of injury. Awareness should be imputed to a company to the extent that its employee[s] possess such information. Knowing of this risk, the manufacturer must also fail to determine the gravity of the danger or fail to reduce the risk to an acceptable minimal level. "Disregard for the public safety"[10]

7. 621 P.2d 1155 (Okl.1980).

8. *Davidson v. First State Bank & Trust Co., Yale,* 559 P.2d 1228 (Okl.1976). *Kurn v. Radencic,* 193 Okl. 126, 141 P.2d 580 (1943).

9. *Garland Coal & Mining Co. v. Few,* 267 F.2d 785 (10th Cir.1959); *A.T. & S.F. Ry. Co. v. Chamberlain,* 4 Okl. 542, 46 P. 499 (1899); *DX Oil Co. v. Brown,* 477 P.2d 67 (Okl.1970).

10. *Moore v. Jewel Tea Co.,* 116 Ill.App.2d 109, 253 N.E.2d 636 (1969); *Hoffman v. Sterling*

reflects a basic disrespect for the interests of others.

The following factors will aid the factfinder in determining whether the conduct of the manufacturer meets the required standard of "reckless disregard for the public safety:"

A manufacturer's fault in failing to deal with a product defect increases with the gravity of the resulting risk of harm to the public. As the costs of correcting or reducing the danger decrease, so does the credibility of excuses for failing to do so. As the manufacturer's awareness of the existence and gravity of the product defect increases, so does its duty to correct the problem and its culpability for failing to do so. The time lapse in responding to a product defect, its reasons for not acting further, and the nature of steps actually taken to correct the defect shed light on the manufacturer's values of profits over safety, and therefore its culpability. If the manufacturer deliberately deceived the public about its product's safety, it will usually be especially blameworthy and deserving of punishment.[11]

## PUNITIVE DAMAGES AUTHORIZED: QUESTIONS ANSWERED.

HODGES, HARGRAVE, OPALA and WILSON, JJ., concur.

SIMMS, V.C.J., and LAVENDER, J., concur in part; dissent in part.

BARNES, C.J., and IRWIN, J., dissent.

OPALA, Justice, concurring:

While I join the court's opinion, I write separately to articulate my reasons for concurring in the answers given by today's pronouncement.

### I.

The first question before us is whether under Oklahoma law punitive damages may be recovered in an action founded upon the theory of "manufacturers' products liability".[1]

Statutory law of this state *explicitly sanctions* allowance of punitive damages in *all* actions *except* those *ex contractu.* The terms of 23 O.S.1981 § 9 unmistakably provide that *"for the breach of an obligation not arising from contract"* a jury award "for the sake of example" and "by way of punishing" the offending party may be made in addition to the actual damages. An obligation is deemed to arise from a contract when it is derived from (a) an express promise, (b) a promise implied in fact or (c) a promise implied in law.[2] Products liability clearly does not fall under this rubric. Governed by limitations applicable to actions *ex delicto,* it is treated as a *tort* remedy. Its gravamen is not breach of a *promise* but rather breach of a legal *duty* to market a safe product.[3]

According to some commentators, a punitive damages claim simply will not fit into a products case because of an inherent conceptual inconsistency. The thesis advanced is that the element of aggravated fault, which is essential to every punitive damages award, is irrelevant to recovery on a products theory. In a products case, it is urged, the inquiry is focused not on the *actor's blame* but rather on the *product's*

---

*Drug, Inc.,* 485 F.2d 132 (3rd Cir.1973); *G.D. Searle & Co. v. Superior Ct.,* 49 Cal.App.3d 22, 122 Cal.Rptr. 218 (1975); *Pease v. Beech Aircraft Corp.,* 38 Cal.App.3d 450, 113 Cal.Rptr. 416 (1974).

**11.** Owen, *Punitive Damages in Products Liability Litigation,* 74 Mich.L.Rev. 1258 (1976).

**1.** By this appellation the concept of strict liability for defective products was first introduced into our case law. *Kirkland v. General Motors Corporation,* Okl., 521 P.2d 1353, 1361 [1974].

**2.** *T & S Investment Company v. Coury,* Okl., 593 P.2d 503, 505 [1979]; *Anderson v. Copeland,* Okl., 378 P.2d 1006, 1007 [1963]; *Piggee v. Mercy Hospital,* 199 Okl. 411, 186 P.2d 817, 818 [1947] and *First National Bank v. Matlock,* 99 Okl. 150, 226 P. 328, 331–332 [1924], 36 A.L.R. 1088.

**3.** *Kirkland v. General Motors Corporation,* supra note 1, at 1361; *O'Neal v. Black & Decker Manufacturing Company,* Okl., 523 P.2d 614, 615 [1974] and *Nichols v. Eli Lilly & Co.,* 501 F.2d 392, 393 [10th Circ.1974].

"defectiveness".[4] The argument based on incompatibility is spurious because it presupposes that "punitive damages claims must be established by facts identical to those supporting the underlying claim for compensatory damages".[5] There is neither historical nor legal basis for confining exemplary damages to cases in which the underlying claim is founded on some fault concept. Punitive damages recovery is traditionally available at common law in actions founded on several legally cognizable theories which impose liability without regard to the actor's fault.[6]

Because our statutory law clearly authorizes punitive damages awards in *all* noncontractual litigation[7] at law and there exists *no* conceptual impediment to their allowance in products liability cases, Oklahoma law does not preclude a products plaintiff from either alleging or proving facts tending to support recovery of exemplary damages.

## II.

The second question to be answered is: What "character of evidence" a products plaintiff must elicit to warrant submission of his punitive damages plea to the jury?

Insofar as this question may call upon us to forecast a set of rules adapting Oklahoma's punitive damages award standards for special application to litigation over products safety, an answer here would be inappropriate. It would be at best speculative, premature, ill advised and academic. *This case is not here for appellate review on a full trial record.*

Inasmuch as Oklahoma's extant case law does, in my view, amply concretize the current general norms of statutory liability for punitive damages, we should here go no further than pronounce that these standards are available for invocation in litigation over products safety. Additionally, I would include a helpful reminder upon two points of our law: (a) vicarious liability and (b) reckless-versus-wilful conduct distinction.

In Oklahoma, punitive damages recovery is imposable vicariously. A principal—individual or corporate—may be made answerable in punitive damages for those offending acts done within the general scope of employment by *any* employee—no matter what his level of responsibility in the company's organization—which would serve to justify an exemplary damages award against the employee as an individual tortfeasor.[8]

The misconduct for which punitive damages may be exacted is characterized by statute, 23 O.S.1981 § 9, in terms of defendant's culpability of "oppression, fraud or malice, *actual or presumed . . .*" [emphasis added]. Case law construing this language recognizes that malicious or oppressive intent may be inferred from "complete indif-

---

4.  Owen, *Punitive Damages in Products Liability Litigation,* 74 Mich.L.R. 1258, 1268 [June 1976].

5.  Direct judicial repudiation of the incompatibility argument is found in *Drake v. Wham-O Manufacturing Co.,* 373 F.Supp. 608, 611 [E.D. Wis., 1974]. Accord *Heil Co. v. Grant,* 534 S.W.2d 916, 926 [Tex.Civ.App.1976] and *Maxey v. Freightliner Corp.,* 450 F.Supp. 955, 962 [N.D.Tex.1978].
    *Owen,* supra note 4, at 1269; "Punitive awards are tied to a defendant's conduct, not the underlying theory of liability". Ghiardi & Kircher, *Punitive Damages Law & Practice,* Section 6.18, at 67 [Callaghan 1982].
    See Annotations in 13 A.L.R.4th 52 [1982] and 29 A.L.R.3rd 1021 [1970].

6.  *Owen,* supra note 4, at 1270; *McConnell v. Oklahoma Gas and Electric Company,* Okl., 530 P.2d 127, 129 [1974]; *Peerson v. Mitchell,* 205 Okl. 530, 239 P.2d 1028, 26 A.L.R.2d 1362 [1951] (actions for harboring a vicious dog); *Oklahoma City v. Tytenicz,* 171 Okl. 519, 43 P.2d 747 [1935]; *Empire Oil & Refining Co. v. Rawlings,* 178 Okl. 391, 62 P.2d 1253, 1254 [1936]; *Garland Coal and Mining Company v. Few,* 267 F.2d 785, 790 [10th Circ.1959] (nuisance actions).

7.  *Dayton Hudson Corp. v. American Mut. Liab. Ins. Co.,* Okl., 621 P.2d 1155, 1158, 16 A.L.R.4th 1, [1980].

8.  *Kurn v. Radencic,* 193 Okl. 126, 141 P.2d 580, 581 [1943] and *Dayton Hudson Corp. v. American Mut. Liab. Ins. Co.,* supra note 7, at 1160, footnote 19. A minority of the states do not follow the vicarious liability rule. See *Owen,* supra note 4, at 1300–1301.

ference to consequences", "conscious or reckless disregard of the safety of others" or even from "gross negligence", but *mere violation* of a statute is not sufficient as an evidentiary predicate for punitive damages award.[9]

A pronouncement of norms that adapt existing punitive damages liability standards to litigation over misconduct in marketing or manufacturing unsafe products must be postponed to await a case-by-case analysis.[10]

---

**9.** *Morgan v. Bates,* Okl., 390 P.2d 486, 488 [1964]; *Wootan v. Shaw,* 205 Okl. 283, 237 P.2d 442, 444 [1951]; *Keener Oil & Gas Co. v. Stewart,* 172 Okl. 143, 45 P.2d 121 [1935] and *Garland Coal and Mining Company v. Few,* supra note 6, at 790.

**10.** For analysis of various types of manufacturer and marketing misbehavior see *Owen,* supra note 4, at 1329–1369 and *Ghiardi and Kircher,* supra note 5, in § 6.27 at 95.