SUPERIOR COURT
OF THE
STATE OF DELAWARE

**RICHARD F. STOKES**
*JUDGE*

**SUSSEX COUNTY COURTHOUSE**
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

August 9, 2016

Matthew R. Fogg, Esquire
Debra C. Aldrich, Esquire
28535 Dupont Blvd., Suite 2
Millsboro, DE 19966

Kevin J. Connors, Esquire
1007 N. Orange Street, Suite 600
Wilmington, DE 19899

RE: ***Patrick Black v. Chromascape, Inc., a foreign corporation, d/b/a/ Amerimulch***
C.A. No.: S13C-04-018 RFS

Submitted: July 28, 2016
Decided: August 9, 2016

Upon Defendant's Motion to Strike Plaintiff's Expert Report.
Denied.

Dear Counsel:

Pending before the Court is the Motion to Strike Plaintiff's Expert Report filed by Defendant, Chromascape, Inc., a foreign corporation, d/b/a Amerimulch ("Defendant"). For the following reasons, Defendant's Motion is **DENIED.**

This is a products liability action arising out of an incident that took place on April 25, 2011. Plaintiff, Patrick Black ("Plaintiff"), had been operating a front-end loader to feed mulch from a ground level storage pile into the hopper of a Mega Mite mulch-dyeing machine ("Mega Mite"). Defendant designed, constructed, and installed the Mega Mite operated by Plaintiff on the day of the incident. At some point, while Plaintiff was loading mulch into the Mega Mite, the feeder bridged.[1] In an attempt to clear the bridge, Plaintiff tapped on the mulch was his foot. As soon as Plaintiff successfully cleared the bridge, he was "sucked into" the Mega Mite resulting in severe personal injuries and amputation of his right leg.

---

[1] Bridging is an industry term which means jammed.

Plaintiff filed a Complaint on April 18, 2013, and alleged Defendant was negligent, careless, and/or reckless by failing to adequately design, manufacture, or inspect the Mega Mite.[2] Plaintiff further alleged Defendant failed to provide adequate instructions or warnings with respect to the Mega Mite's use and operation.[3] Defendant filed an Answer denying all the allegations set forth in Plaintiff's Complaint. After several amendments, the Trial Scheduling Order set a June 29, 2015 deadline for the production of Plaintiff's expert report.

On June 25, 2015, Plaintiff submitted an expert report prepared by Bartley Eckhardt ("Eckhardt"). However, upon receiving new information, Eckhardt submitted a supplement ("Supplemental Report") to his initial expert report on November 12, 2015. On February 1, 2016, Defendant filed a Motion to Strike Eckhardt's Supplemental Report for two reasons. First, Defendant contends the Supplemental Report was untimely. Second, Defendant contends that Eckhardt's opinion expresses a legal conclusion which is prohibited by Delaware law.

As mentioned, Defendant offers two bases to strike Eckhardt's Supplemental Report. First, Defendant contends that because Plaintiff's expert deadline was June 29, 2015, the Supplemental Report filed on November 12, 2015, should be stricken as untimely. In support of this argument, Defendant notes that the Trial Scheduling Order did not contain any provisions which allowed either party's expert to supplement their original report. Further, Defendant contends it has been prejudiced because "Plaintiff's untimely production of what is in reality a rebuttal report prohibits [Defendant's] expert from addressing Eckhardt's opinions as the Court intended."[4]

In *Chase Manhattan Mortg. Corp. v. Advanta Corp.*,[5] the defendant sought to exclude a supplemental report filed by the plaintiff's expert because it was submitted six weeks after the deadline for expert reports.[6] To begin its analysis, the court explained that "[t]he touchstone for determining whether to exclude untimely expert reports is whether the party opposing their admission is prejudiced."[7] The court found that the defendant was not prejudiced for several reasons.[8] First, the plaintiff's expert's supplemental report was submitted before the defendant

---

[2] *See* Am. Compl. ¶ 26.
[3] *Id.*
[4] Def.'s Reply in Supp. of its Mot. to Strike at 3.
[5] 2004 WL 422681, at *1(D. Del Mar. 4, 2004).
[6] *Id.* at *10.
[7] *Id.*
[8] *Id.*

was scheduled to depose her.[9]  Because of this, the court held that the defendant had enough time to question the plaintiff's expert about the opinions expressed in the supplemental report.[10] Second, the court cited the lapse of time between the submission of the supplemental report and when the defendant raised its objections.[11]  Had the defendant felt truly prejudiced, it would have raised this objection as soon as the supplemental report was filed.[12]  Finally, the court noted that the defendant did not articulate any prejudice it suffered apart from the report's untimeliness.[13]

Like the defendant in *Chase Manahattan*, Defendant's only claim of prejudice stems from the fact that Plaintiff's supplemental report was untimely.  While timeliness is an important factor, it is not alone determinative.[14]  The supplemental report in this case was submitted before Defendant was scheduled to depose Plaintiff's expert.  Thus, Defendant had the opportunity to question Plaintiff's expert about the opinions expressed in the supplemental report.  Additionally, Defendant raised this objection nearly three months after Plaintiff's supplemental report was submitted.  In the face of true prejudice, Defendant would have raised this objection much sooner than it did.

The Court granted Defendant the opportunity to have its expert submit his own supplemental report in response to Plaintiff's.  The following excerpts from the February 5, 2016 motion hearing and the Court's February 18, 2016 decision show the fallacy of this prejudice argument:

| Mr. Connors: | The fact that Doctor Richard said he didn't feel the need to add another report or, you know, a surrebuttal [sic] report, that's his opinion.  That may not be counsel's opinion.  I'm not asking for that at this point in time, but there is no provision in the scheduling order for it.[15] |
|---|---|

*    *    *

| Mr. Connors: | Your Honor, Kevin Connors.  Your Honor mentioned in the discussion here that there is sufficient time for the defense to respond to the punitive damage issue.  Does Your Honor mean that defendants have the -- can submit an expert? |
|---|---|

---

[9] *Id.*

[10] *Id.*

[11] *Chase Manhattan Mortg. Corp.*, 2004 WL 422681, at *10.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Black v. Chromascape, Inc.*, C.A. No. S13C-04-018, at 51 (Del. Super. Feb. 5, 2016) (TRANSCRIPT).

| The Court: | Yes. Yes, of course. Yes, of course. Of course, I expect that. What I was thinking is you would probably use the people you already have on board. That was my assumption. Yes, of course. I think -- yes, there would be time. I thought I indicated that, but if I didn't, I certainly meant to. |
| --- | --- |
| Mr. Connors: | Okay. Thank you. I appreciate that, Your Honor.[16] |

The Court made it abundantly clear that Defendant's expert could submit an additional report to address what Plaintiff's expert included in his Supplemental Report. As such, the Court rejects Defendant's argument that allowing Plaintiff to file an expert report after the deadline has prejudiced its position.

Furthermore, it was the Court's understanding that the parties were going to work out the scheduling of additional expert reports and depositions amongst themselves:

| Mr. Rosner: | We will work that out among ourselves, Your Honor. I doubt there will be a need to redepose the expert, but if there is, it will be limited to whatever he may say that may appear new that we didn't have before, Judge, and we may need to take his short deposition hopefully, depending upon what he says, of course, since we have no idea what he is going to say. Okay. We will work that out among the parties and ask your assistant if we can't agree ourselves, okay, Your Honor?[17] |
| --- | --- |

Despite this understanding, the Court received no further communications from either party regarding this issue.

Second, Defendant contends that the Supplemental Report should be stricken because Eckhardt "purports to testify that [Defendant] acted with conscious indifference to the safety of others including Plaintiff, as this opinion expresses a legal conclusion which Delaware law prohibits."[18] Defendant's position corresponds with the so-called "ultimate issue rule" which has its roots in early common law. Generally speaking, this rule prohibits an expert from stating an opinion, conclusion, or inference where the trier of fact could make its own deductions.[19]

---

[16] *Black v. Chromascape, Inc.*, C.A. No. S13C-04-018, at 12-13 (Del. Super. Feb. 18, 2016) (TRANSCRIPT).
[17] *Id.* at 13.
[18] Pl.'s Mot. to Strike at 4.
[19] *See generally* 7 Wigmore, Evidence § 1918.

However, the "ultimate issue rule" was effectively abolished in this State with the adoption of Rule 704 of the Delaware Rules of Evidence.

D.R.E. 704, which was modeled after the Federal Rule, states, in its entirety, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact." "Although D.R.E. 704 allows opinions on ultimate issues, '[t]he abolition of the ultimate issue rule does not lower the bars so as to admit all opinions.' "[20] The expert's testimony must assist the trier of fact.[21] Further, if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, the testimony will be excluded.[22]

To be sure, "the line between an inadmissible legal conclusion and admissible assistance to the trier of fact in understanding the evidence or in determining a fact in issue is not always bright."[23] Facing this issue, the Sixth Circuit concluded that "[t]he best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate."[24] In *Karns v. Emerson Electric Company*,[25] the Tenth Circuit discussed the line between an inadmissible legal conclusion and admissible assistance in the context of an expert opinion that was analogous to Eckhardt's opinion in the present case.

In *Karns*, the plaintiff, a thirteen-year-old boy, was cleaning up an overgrown yard by picking up trash while his uncle was operating a weed-trimming and brush-cutting device.[26] The plaintiff had bent down to pick up some debris approximately eight feet behind his uncle when the blade of the device struck something near the ground, which caused the device to swing violently around, cutting off the plaintiff's right arm.[27] At trial, judgment was entered in favor of the plaintiff and the defendant appealed.[28] On appeal, the defendant argued that the trial court erred in permitting the plaintiff's expert to testify that the defendant acted recklessly.[29]

---

[20] *State v. Manger*, 732 A.2d 234, 245 (Del. Super. 1997) (citation omitted).
[21] D.R.E. 702.
[22] D.R.E. 403.
[23] *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997).
[24] *Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).
[25] 817 F.2d 1452 (10th Cir. 1987).
[26] *Karns*, 817 F.2d at 1454.
[27] *Id.*
[28] *Id.*
[29] *Id.* at 1459.

To begin its analysis, the Tenth Circuit explained that although Rule 704 allows experts to render an opinion that embraces the ultimate issue, "[o]pinions embracing legal standards may, however, be excluded for reasons, such as the likelihood of jury confusion, the danger of unfair prejudice, or the inability of such evidence to assist the trier of fact."[30] Upholding the decision of the trial court, the Tenth Circuit noted that, given the technical, complex nature of the device at issue, expert testimony would be expected to assist the trier of fact.[31] Also, the legal term, reckless, was not "so complex or shaded with subtle meaning as to be beyond the understanding of the average person."[32] Accordingly, the Tenth Circuit found that the expert's testimony did not invade the province of the jury.[33]

The basic necessities of expert testimony are relevance and reliability.[34] Eckhardt's Supplemental Report is both relevant and reliable. It is relevant because it will assist the trier of fact, and it is reliable because it discusses matters beyond common knowledge. Further, the phrases "conscious indifference to the safety of others" and "wanton disregard for safety" do not have a separate, distinct and specialized meaning in the law different from that in present vernacular. These phrases are well within the understanding of the average person. Accordingly, the Court concludes that since Eckhardt's Supplemental Report is "otherwise admissible," striking it would be inappropriate.

Considering the foregoing, Defendant's Motion to Strike Plaintiff's Expert Report is **DENIED.**

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Richard F. Stokes*

Richard F. Stokes

cc: Prothonotary's Office

---

[30] *Id.*

[31] *Karns*, 817 F.2d at 1459.

[32] *Id.*; *but see Burkhart*, 112 F.3d at 1212 (holding that it was improper to permit the expert to testify as to whether the plaintiff had been discriminated against because "[t]he expert's actual testimony constituted a legal conclusion for two reasons: it tracked the language of the statute, and the term 'discrimination' has a specialized legal meaning that is more precise than the lay understanding of the term").

[33] *Karns*, 817 F.2d at 1459.

[34] *Sweiger v. Del. Park, L.L.C.*, 2013 WL 6662720, at *1 (Del. Super. Oct. 8, 2013).