**David POLYS and Marcia Polys, Plaintiffs–Appellants,**

v.

**TRANS–COLORADO AIRLINES, INC., Defendant–Appellee.**

No. 88–1298.

United States Court of Appeals, Tenth Circuit.

Aug. 12, 1991.

---

Edward A. Gleason of Sherman & Howard, Colorado Springs, Colo., for plaintiffs-appellants.

William White (Joseph T. Batuello with him on the brief) of Byrne, Kiely & White, Denver, Colo., for defendant-appellee.

Before SEYMOUR, BARRETT and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Plaintiffs, David L. Polys and Marcia Polys, appeal a judgment in favor of the defendant, Trans–Colorado Airlines, Inc., in the Polyses' personal injury suit against Trans–Colorado. We affirm.

On January 14, 1984, Trans–Colorado Flight 216, which originated in Albuquerque, New Mexico, landed at the Durango, Colorado airport, skidded to the left, and stopped abruptly upon impact with a snowbank. R.Vol. I, tab 5 at 1. David Polys was one of four passengers aboard that plane. Approximately two years later, the Polyses filed a personal injury action against Trans–Colorado Airlines, Inc. David Polys claimed that the "aircraft landing incident caused a closed head injury [to him] which produced disabling psychological and psychiatric effects." Mrs. Polys joined the action claiming a loss of consortium. Trans–Colorado admitted negligence in the operation of the aircraft, but denied causation and damages. After a bench trial, the United States District Court for the District of Colorado held for the defendants, finding that the Polyses had "failed to prove that the conduct of the defendant's agents on January 14, 1984, caused any injury to David Polys."

On appeal, the Polyses raise two issues. First, they contend that the district court erred in excluding the deposition testimony of two of the Polyses' expert witnesses. Second, they contend that the district court erred in finding that they failed to prove that Trans–Colorado's admitted negligence caused any injury to Mr. Polys and, thus, erroneously denied recovery for the alleged injuries and damages.

I.

█ The Polyses argue that the district court erred in excluding the deposition testimonies of two expert witnesses, Dr. Schultz and Dr. Daven. We disagree because the Polyses failed to preserve the issue for appeal by making an offer of proof and the court's ruling did not amount to plain error.

Federal Rule of Evidence 103(a) states in pertinent part:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

. . . .

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

The first purpose of the offer of proof requirement is to allow the trial judge to make an informed evidentiary ruling. The plain language of Federal Rule of Evidence 103(a)(2) requires that the judge be informed contemporaneously with the proponent's attempt to admit the evidence. This will be accomplished if the substance and purpose of the evidence are apparent to the judge from the context in which it is offered, or an offer of proof either precedes

or immediately follows the ruling so that the trial judge can reconsider.[1]

■ To satisfy the rule, we have previously stated that "merely telling the court the content of ... proposed testimony" is not an offer of proof. *Gates v. United States*, 707 F.2d 1141, 1145 (10th Cir.1983) (citing *United States v. Brown*, 540 F.2d 1048, 1053 (10th Cir.1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977)). Rather, as the Fifth Circuit stated in *McQuaig v. McCoy*, 806 F.2d 1298, 1301 (5th Cir.1987), the proponent must explain what it expects to show and "the grounds for which the party believes the evidence to be admissible.... [so that the trial] court [is] on notice of the purpose for which the evidence is offered while there is still time to remedy the situation."[2]

The second purpose for the offer of proof is to create a clear record that an appellate court can review to "determine whether there was reversible error in excluding the [testimony]." *New Mexico Sav. & Loan Assoc. v. United States Fidelity and Guar. Co.*, 454 F.2d 328, 334 (10th Cir.1972) (citing *Downie v. Powers*, 193 F.2d 760, 768 (10th Cir.1951) and 5 Moore's Fed.Prac. (2d ed.), ¶ 43.11, pp. 1381–82; *see also McQuaig v. McCoy*, 806 F.2d at 1302; *Thomas v. Wyrick*, 687 F.2d 235, 239 (8th Cir.1982), *cert. denied*, 459 U.S. 1175, 103 S.Ct. 824, 74 L.Ed.2d 1020 (1983).

■ Once we find that a party, either in fact or substance, made an offer of proof of excluded evidence, then a trial judge's "decisio[n] to admit or exclude evidence 'will not be reversed by this court absent a clear abuse of discretion.'" *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1266 (10th Cir.1988) (quoting *Weir v. Federal Insur. Co.*, 811 F.2d 1387, 1396 (10th Cir.1987)); *see also Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1242 (10th Cir.1990); *United States v. Alexander*, 849 F.2d 1293, 1301 (10th Cir.1988). This is especially true with respect to deposition testimony. *Alfonso v. Lund*, 783 F.2d 958, 961 (10th Cir.1986); *Reeg v. Shaughnessy*, 570 F.2d 309, 317 (10th Cir.1978); *Sims Consol., Ltd. v. Irrigation and Power Equip., Inc.*, 518 F.2d 413, 418 (10th Cir.1975), *cert. denied*, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 141 (1975); *Campbell v. Barnett*, 351 F.2d 342 (10th Cir.1965).

■ Under this standard of review, we strongly defer to the trial court. The review is generally setting specific, looking at whether the district court correctly weighed appropriate factors. *See, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). Even if the trial judge abused his or her discretion in making a decision to exclude evidence, we will overlook the error as harmless unless a party's substantial right was affected.[3] *K–B Trucking Co. v.*

---

1. Of course, no offer of proof is required if it would have been futile. As, for example, it would be if the proponent is not allowed to proffer an explanation for the record. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 175 n. 22, 109 S.Ct. 439, 453 n. 22, 102 L.Ed.2d 445 (1988) (applying Fed.R.Civ.P. 46). Federal Rule of Civil Procedure 46 states in part: "if a party has no opportunity to object to a ruling ... at the time it is made, the absence of an objection does not thereafter prejudice the party." Naturally, if the nature of excluded evidence is not clear from the substance of the questions then the same reasoning applies to the offer of proof requirement.

2. *See, e.g., Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1104–05 (8th Cir.1988) (counsel told trial court what excluded evidence would tend to prove); *McQuaig v. McCoy*, 806 F.2d at 1302 (record contained six pages about substance of evidence and proponents' reasons for offering it); *Coursen v. A.H. Robins Co.*, 764 F.2d 1329,

1333 (9th Cir.1985) (proponent "apprise[d] the judge of the purpose of the evidence"); *Collins v. Wayne Corp.*, 621 F.2d 777, 781 (5th Cir.1980) (deposition was not filed, but proponent made "the substance of the deposition known to the district court"); *Fenstermacher v. Philadelphia Nat'l Bank*, 493 F.2d 333, 338 (3d Cir.1974) ("to prove my case" was inadequate offer of proof).

The trial judge may also be sufficiently apprised, if the excluded evidence was previously discussed with the trial judge, for example at the pre-trial conference, so that during trial the judge is well aware of the content and purpose of the evidence.

3. After finding abuse of discretion, appellate courts have nonetheless refused to reverse trial courts' decisions to exclude deposition testimony as harmless error if it would not have added anything to the evidence presented. *See, e.g., Sims Consol., Ltd. v. Irrigation and Power Equip., Inc.*, 518 F.2d at 418 (In a case in which

*Riss Intern. Corp.,* 763 F.2d 1148, 1156 (10th Cir.1985); *Julander v. Ford Motor Co.,* 488 F.2d 839, 842 (10th Cir.1973); Fed. R.Civ.P. 61.

On the other hand, if the complaining party failed to meet the offer of proof standard, we can reverse only if there was plain error affecting a party's substantial rights. Fed.R.Evid. 103(d).[4] Although the plain error doctrine applies to both criminal and civil cases, with respect to the latter, "[t]he 'plain error' exception ... has been limited to errors which seriously affect 'the fairness, integrity or public reputation of judicial proceedings.'" *McEwen v. City of Norman, Okla.,* 926 F.2d 1539, 1545 (10th Cir.1991) (quoting *Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1460 (10th Cir.1987)).[5] The "miscarriage of justice" must be "patently plainly erroneous and prejudicial." *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1516 (10th Cir. 1984), *aff'd* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985).

The Polyses' counsel made no formal offer of proof when the district court sustained Trans–Colorado's objection to the

---

all the testimony was by deposition, the court found that "[i]t [was] not error to refuse to admit into evidence, ... or ... to refuse to consider depositions that do not add anything of probative value which has already been developed."); *Fenstermacher v. Philadelphia Nat'l Bank,* 493 F.2d at 338 ("The district judge's refusal to permit the introduction of the depositions into evidence was not prejudicial ... [because] the depositions do not appear to add any information to that given in oral testimony by the deponents and otherwise developed at the hearing."). Another example of harmless error in a jury trial is even if the jury had considered the evidence the outcome would be the same. *See Bower v. O'Hara,* 759 F.2d 1117, 1123 (3d Cir.1985) (finding error because the jury might have decided differently with the excluded testimony).

**4.** In *Reese v. Mercury Marine Div. of Brunswick Corp.,* 793 F.2d 1416, 1421 (5th Cir.1986), the Fifth Circuit stated:

[I]n asserting objections to a trial court's exclusion of evidence, a party is required under Fed.R.Evid. 103(a)(2) to carefully articulate every ground for which the evidence is admissible. *Failure to do so renders the district court's ruling reversible only upon a finding of plain error....* Busy trial courts should not be required to repeat trials, especially civil trials, because the trial judge has excluded evidence for lack of a clear understanding of the proponent's purpose in offering the evidence. The trial judge must be put on notice of the purpose for which the evidence is offered while there is still time to remedy the situation. It is the proponent's duty, not that of the trial court, to clearly articulate the purpose for which the evidence is offered. (citations omitted) (emphasis added). *But see Petty v. Ideco,* 761 F.2d 1146, 1151 (5th Cir. 1985), an earlier case in which the Fifth Circuit stated: "Where no offer of proof appears of record, there is no way that a party can demonstrate that his substantial rights have been affected." We prefer the Fifth Circuit's later reasoning in *Reese,* however, because "[p]lain error

is error not raised at trial, but *nevertheless* considered by a reviewing court," who will determine if a party's substantial rights have been affected. 1 Weinstein and Berger, Weinstein's Evidence ¶ 103[01] (1986) (emphasis added). "[T]he distinction between harmless and plain error is whether the particular error in the case at hand excuses the party's failure to bring it properly to the trial court's attention." *Id.* For a discussion about offer of proof in a criminal matter, *see United States v. Willie,* 941 F.2d 1384 (10th Cir.1991).

Similarly, with respect to admitted evidence, a timely motion to object is required at the time the evidence is admitted or the appellate court "will reverse only if there was plain error and a substantial right of the objecting party is affected." *Big Horn Coal Co. v. Commonwealth Edison Co.,* 852 F.2d at 1266; *see also Karns v. Emerson Elec. Col.,* 817 F.2d 1452, 1460 (10th Cir.1987) (citing Fed.R.Evid. 103(a)(1) and (d); *Whiteley v. OKC Corp.,* 719 F.2d 1051, 1057 (10th Cir.1983)); *Bannister v. Town of Noble, Okla.,* 812 F.2d 1265, 1271 (10th Cir.1987).

**5.** *See also Petty v. Ideco,* 761 F.2d at 1150 ("The 'plain error rule' is an extraordinary remedy which is invoked only in exceptional circumstances to avoid a miscarriage of justice." (citation omitted)); *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1516 (10th Cir.1984), *aff'd,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985) ("Courts repeatedly have cautioned that the plain error exception is limited to exceptional cases."); *Brenner v. World Boxing Council,* 675 F.2d 445, 456 (2d Cir.1982), *cert. denied,* 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982) ("[T]he plain error doctrine, especially in civil cases, should be applied only where the 'error [is] so serious and flagrant that it goes to the very integrity of the trial.'") (quoting *Modave v. Long Island Jewish Medical Center,* 501 F.2d 1065, 1072 n. 1 (2d Cir.1974)); *Gay v. P.K. Lindsay Co.,* 666 F.2d 710, 712 (1st Cir. 1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 849 (1982) ("Plain error ... is a rare species in civil litigation; it will be found only 'to prevent a clear miscarriage of justice.'"

admission of both Dr. Daven's and Dr. Schultz's deposition testimonies. Following the exclusion of Dr. Daven's testimony, counsel responded "Thank you, Judge. The next witness we would call...." R. Vol. II at 25. The next witness was to be Dr. Schultz. Polyses' counsel submitted his deposition testimony for admission. Although their counsel briefly explained that the first will-call witness was out of the country and the second was out of the district, both over 100 miles away, he did not explain the substance or purpose of the experts' testimonies. In response to the sustained objection, Polyses counsel merely called the next witness. R. Vol. II at 26.

Furthermore, the context in which the deposition evidence was offered; following the Polyses' first witness, revealed nothing about the substance or purpose of the testimonies. The Polyses argue, nonetheless, that they met the Rule 103(a)(2) requirement because "in the course of proceedings, the district court was made aware of the nature and substance of the excluded testimony." Appellants' Reply Brief at 8. To support this argument, the Polyses cite four times during the trial when Dr. Daven or Dr. Schultz were discussed. When the doctors' names came up one and two days later, however, the plaintiffs' counsel made

no effort to argue for admittance of the deposition testimony and they never explained what its contribution would have been.

■ The plaintiffs appear to believe that if the significance of excluded evidence becomes apparent later, a trial judge *sua sponte* must reconsider its earlier evidentiary ruling. The plaintiffs misunderstand the offer of proof requirement. First, eliciting through later testimony the substance of previously excluded evidence, without more in the way of explanation or proffer to the court, satisfies neither the plain language of, nor the purpose for, Rule 103(a)(2). As we stated, the Rule contemplates some contemporaneity between the trial judge's knowledge about the proposed evidence and the evidentiary ruling to allow a proper decision *at the time* the evidence is offered. Even considering, hypothetically, that counsel had requested admission of the excluded deposition testimonies later in the proceedings when other witnesses testified about these doctors, the testimony in question was not sufficient to apprise the district court of the substance and purpose of the excluded testimony and would not have satisfied the second purpose of the rule—to create a clear record for us to review the trial court's decision.[6] There-

---

(quoting *Nimrod v. Sylvester,* 369 F.2d 870, 873 (1st Cir.1966)).

**6.** With respect to Dr. Daven, on the second day of trial during plaintiff's direct examination of Dr. Witty, the witness testified that he had received and read Dr. Daven's reports. Then the following exchange occurred:

Q  What else did you obtain in the way of history related to the signs and symptoms [of the alleged neck injury]?
A  [Polys] mentioned that is was believed that he was experiencing seizure disorder between that time and the present.... I have no evidence of the seizure disorder other than his telling me that and that he had been prescribed anticonvulsive medicine for that.
Q  .... Did Dr. Daven document the seizure disorder?
A  I believe he did. I believe he indicated that he believed there was a seizure disorder. R.Vol. III at 60–61.

Later during plaintiffs' direct examination of Dr. Witty, the testimony was:

A  I also reviewed the records ... of Dr. Daven in Pueblo.

... He's a neurologist.
Q  And what was his determination?
A  Well, he says, this unfortunate man present with a post-traumatic design manifested by seizure persistent—documents the persistence of latter difficulties with no improvement over the last two and a half years is worrisome and raises likelihood that Mr. Polys will probably be left with permanent neuropsychological sequelae. R.Vol. III at 98–99.

Finally, during the plaintiffs cross-examination of defendant's expert witness Dr. Spitz, the testimony was:

Q  Have you reviewed Dr. Daven's deposition testimony in this matter?
A  Yes, I have.
Q  Are you aware that Dr. Daven is board certified in, not only neurology, but in child neurology as well?
A  Yes, I am.
Q  And is also an electroencephalographer?
A  Yes.
Q  And had has reviewed and evaluated Mr. Polys, and did you disagree with his conclusion that Mr. Polys in fact does have a seizure disorder?

fore, because the Polyses have not preserved the issue for appeal, we can not review the district court's decision to exclude the deposition testimonies for abuse of discretion. Consequently, we do not reach the harmless error question. Instead, we examine the record for plain error.

■ We note that it is difficult to find plain error in cases like this because "failure to comply with normal requirements of offers of proof is likely to produce a record which simply does not disclose the [plain] error." Fed.R.Evid. 103(d) advisory committee's note. On the facts before us, however, we can not say exclusion of the deposition testimonies was plain error comprising an exceptional case of prejudice or unfairness.

First, we find no plain error. We agree with Trans-Colorado that the district court was not automatically required to admit the deposition testimonies under Federal Rule of Civil Procedure 32(a)(3)(B) just because the witnesses were more than 100 miles away as plaintiffs appear to argue. The trial judge appropriately considered surprise to opposing counsel. *See Alfonso v. Lund*, 783 F.2d at 961; *see also In re Air Crash Disaster at Stapleton International Airport*, 720 F.Supp. 1493, 1502 (D.Colo.1989) (The trial court refused to admit deposition testimony even though the witness lived outside the 100 mile radius because it decided the jury needed to "consider and evaluate the witness's credibility."). Conversely, the Polyses are correct that when applying Federal Rule of Civil Procedure 32, courts no longer distinguish between depositions taken for discovery use or for trial use. *See, e.g., United States v. International Business Mach. Corp.*, 90 F.R.D. 377, 381 (S.D.N.Y.1981). Thus, Trans-Colorado's objection to the admission of the depositions because they were taken for discovery and not for use in trial was erroneous. The record indicates, however, only that this was one argument for objection to admission, *not* that the judge accepted this rationale in making his evidentiary ruling. R. Vol. II at 25–26.

Second, we find that the Polyses did not suffer prejudice or unfairness. The Polyses argue that they were prejudiced because, without the deposition testimonies, the district court decided their case on incomplete evidence. They contend that Doctor Schultz's testimony would "have demonstrated the validity of the use of BEAM analysis" and that "Dr. Daven would have documented Mr. Polys' seizure disorders ... [and] would have testified to Mr. Polys' neuropsychological prognosis." Appellant's Brief at 13.

With respect to Dr. Schultz's proposed testimony, the district court found that "[e]ven if the BEAM test results are accepted as indicating some organic brain damage, the tests are not probative of causation." R. Vol. I, tab 5 at 6. Because the Polyses must prove causation in order to recover damages, we find that the exclusion of Dr. Schultz's testimony did not prejudice them. With respect to Dr. Daven's proposed testimony, both parties offered expert evidence about whether David Polys

---

A Yes.
R.Vol. IV at 244. Because these colloquies occurred much later during the trial than when the deposition testimonies were offered they hardly amount to a contemporaneous offer of proof. Even if this testimony had occurred prior to the attempt to admit the depositions, it would not have been sufficient to apprise the trial court about the substance and purpose of Dr. Daven's deposition. Furthermore, we can not say that the trial judge was obliged *sua sponte* to reconsider his earlier ruling.

On cross-examination Dr. Spitz testified about Dr. Schultz as follows:

Q Are you aware that Dr. Schultz who is a board certified neurologist in Phoenix, Arizona was the one who reviewed both the first and the second BEAM studies and has testified by deposition in this matter, and I'm assuming that you have read his testimony?
A Yes, I have.
Q Do you have any qualms with their qualifications as certified BEAM evaluators?
A I do not.
R.Vol. IV at 233–34. This exchange does not yield enough information to apprise the district court or us about the substance and purpose of Dr. Schultz's deposition testimony.

Even though, in the motion before the district court after trial, the plaintiffs claimed that Dr. Schultz "would have further testified on the FRYE standards" for BEAM technology, R.Vol. I, tab 7 at 2, this was not evident during the trial.

suffered seizures and about his neuropsychological condition. Dr. Daven's testimony on this point would have been cumulative. We find that exclusion of Dr. Daven's testimony was not exceptionally prejudicial or unfair to the Polyses.

In sum, absent offers of proof, we can not review the district court's ruling that excluded Doctors Daven's and Schultz's deposition testimonies for abuse of discretion. In addition, we hold that that ruling was not plain error. It was not error and, even if it was, it did not affect a substantial right of the Polyses. Therefore, we will not reverse the district court.

## II.

The Polyses next contend that the district court erred in finding that they failed to prove causation despite Trans–Colorado's admitted negligence.[7] We disagree.

■ The Polyses argue that the district court misapplied the law on aggravation of a pre-existing condition. We review statutory interpretations or legal analyses *de novo*. *Supre v. Ricketts*, 792 F.2d 958, 961 (10th Cir.1986). In Colorado, this cause of action requires a plaintiff to show that a pre-existing condition was aggravated by an accident due to the negligence of another. *Stephens v. Koch*, 192 Colo. 531, 561 P.2d 333, 334 (1977). Although Colorado law regarding aggravation of a pre-existing condition allows a jury to place all the liability for a disability on a defendant if it can not apportion causation between an aggravating accident and a pre-existing condition, a plaintiff must still prove that the accident *aggravated* the pre-existing condition. *See Stephens v. Koch*, 561 P.2d at 334.

■ The plaintiffs argue that the district court essentially made two mistakes.[8] First, they claim that because "the district court acknowledged that [David Polys] previously had psychological problems and that he suffered psychological injury as a result of the accident[,] ... it erred in denying recovery for the aggravation of Mr. Polys' pre-existing psychological conditions caused by Trans–Colorado's admitted negligence." Appellant's Brief at 13–14. With respect to the Polyses claim of aggravation of a pre-existing condition, the district court stated: "For the plaintiff to recover here, it must be said that his personality disorders became worse as a result of a minor inconveniencing incident in which he suffered no physical injury." *Id.* at 9. As Trans–Colorado notes, the district court

> [did] not find that [David Polys'] personality disorders *did* become worse, but only that that specific finding would be required before any further inquiry would become appropriate. Unless the Trial Court found that some condition was "worsened" or "aggravated," which it did not, there is simply no basis for applying the doctrine of pre-existing condition.

Appellee's Brief at 14. Thus the district court correctly applied the law on aggravation of a pre-existing condition to find that David Polys' "mental and emotional disorders," his pre-existing condition, did not become worse as a result of the incident. R. Vol. I, tab 5 at 8.

■ The Polyses' second argument is that they are entitled to damages for emotional distress which, in Colorado negligence actions, is not dependent on either physical injury or impact. Appellant's

7. Because we do not reverse the district court ruling that excluded Doctors Daven's and Schultz's deposition testimonies, we need not address the plaintiffs' first argument that the district court's finding was "based ... on incomplete evidence after it erroneously excluded the deposition testimon[ies]." Appellant's Brief at 12.

8. The Polyses unfortunately confuse two separate causes of action, negligent infliction of emotional distress and aggravation of a pre-

existing condition. For example, while arguing that the district court incorrectly applied the law on aggravation of a pre-existing condition, the Polyses discuss the "impact rule." The "impact rule" concerns negligent infliction of emotional distress. It has nothing to do with aggravation of a pre-existing condition. *Towns v. Anderson*, 195 Colo. 517, 579 P.2d 1163, 1165 (1978) (no requirement of impact in cases of negligently inflicted distress where that distress has resulted in serious physical manifestations).

Brief at 15. To succeed under this theory, David Polys "must have been subjected to an unreasonable risk of bodily harm because of the negligence of another" which caused emotional injury and must have so alleged or he is "preclude[d] ... from recovering such damages." *Slovek v. Board of County Comm'rs*, 697 P.2d 781, 783 (Colo.App.1984) *aff'd*, 723 P.2d 1309 (Colo. 1986) (citation omitted). The Polyses are correct that this cause of action does not require a showing of physical injury or impact. The Polyses apparently construe the following district court statement as a finding of emotional injury: "Where the defendant's conduct is nothing more that negligent, as admitted, recovery for purely emotional and psychological *stresses* would inordinately expand tort law." (Emphasis added). On the contrary, the district court found that David Polys suffered no physical *or psychological* injury as a result of the airplane incident. But more important to our review is the fact that the Polyses did not plead negligent infliction of emotional distress.

In their first amended complaint, the Polyses alleged "severe injury to [David's] back and spine." R. Vol. I, tab 2 at 4. The plaintiffs complained that these injuries would "in time" affect David Polys' physical and mental condition thus setting the stage for the aggravation of a pre-existing condition claim made at trial. The plaintiffs stated:

David L. Polys suffered severe injury to his back and spine. The specific injuries and their ill effects *have in turn caused* Plaintiff's physical and mental condition to deteriorate generally so that *the specific injuries and ill effects alleged* have caused ... Plaintiff to suffer the consequences and ill effects of such deterioration.

R. Vol. I, tab 2 at 3–4 (emphasis added).

Furthermore, at trial the Polyses did not indicate an intention to add a claim for negligent infliction of emotional distress. In opening statements they said they would offer evidence to show that as a result of the airplane incident David Polys suffered chronic post-traumatic stress disorder and seizures in addition to "some problems that were physical coupled with psychological." R. Vol. II at 4. They concluded the opening statement by asking the court to find in the alternative that David Polys' alleged injuries were an aggravation of a pre-existing injury. R. Vol. II at 5. The plaintiffs' closing arguments allude to nothing in addition to the earlier alleged injuries which were post-traumatic stress disorder, organic brain damage, seizures, and aggravation of a pre-existing condition.

Finally, the Polyses' argument that their claim of emotional injury "was raised and specifically addressed at trial" because "the last inquiry the district court made to Trans–Colorado's counsel at trial concerned that law governing aggravation of a pre-existing condition" is nonsense. It is absurd to think that after closing arguments a litigant may introduce a new cause of action. Moreover, the question from the district court judge to the defendant's counsel, merely sought to determine if any recent Colorado cases varied the law on aggravation of a pre-existing condition. R. Vol. V at 89. The brief exchange had nothing whatsoever to do with a negligent infliction of emotional distress claim or the law on that cause of action. We find that the Polyses did not raise a negligent infliction of emotional distress claim either in their complaint or at trial.

In sum, the district court correctly applied the law on aggravation of pre-existing condition to deny recovery on that theory. In addition, the Polyses did not allege negligent infliction of emotional injury and now may not claim that cause of action.

In accordance with the foregoing, we AFFIRM the district court order.