30 F.3d 141
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Angela GLIDDEN, Plaintiff-Appellant,
v.
Arthur A. SCHWARTZ, M.D., Defendant-Appellee.
 No. 93-1084.
 United States Court of Appeals, Tenth Circuit.
 July 25, 1994.
 
 1
 Before KELLY and BARRETT, Circuit Judges, and O'CONNOR, Senior District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 EARL E. O'CONNOR, Senior District Judge.
 
 
 4
 In this medical malpractice action, appellant, Angela Glidden, appeals from the final judgment on the jury's verdict in favor of appellee Arthur A. Schwartz, M.D. We have jurisdiction under 28 U.S.C. Sec. 1291. A brief summary of the relevant facts follows.
 
 
 5
 Ms. Glidden originally noticed a lump on her right thigh in November 1989. She consulted a family physician in Minnesota who, after an ultrasound, diagnosed the lump as a fatty tissue tumor and told her not to worry about the lump, but to have another examination if it continued to bother her. Although the pain in Glidden's leg disappeared, she was still concerned about the lump. After moving to Colorado, she consulted a family physician there about the lump and was referred to Dr. Schwartz, a general surgeon.
 
 
 6
 Glidden went to see Dr. Schwartz on January 11, 1990. Dr. Schwartz expressed concern that the lump was cancer of the lymph node and indicated the mass could only be accurately diagnosed through surgery. On January 18, 1990, Dr. Schwartz performed surgery on appellant under local anesthesia to extract a section of the mass for analysis. After making the incision, Dr. Schwartz realized the mass was not a lymph node tumor, but thought it was an extraskeletal sarcoma, a malignant soft tissue tumor. Dr. Schwartz also discovered that the mass was much deeper than he originally thought. He terminated the initial surgery and told Glidden that the mass needed to be removed, but that a second surgery under an epidural anesthetic would be required. Glidden agreed to the second surgery and Dr. Schwartz removed the entire mass later that same day.
 
 
 7
 In the process of removing the mass, Dr. Schwartz severed Glidden's femoral nerve, which provides muscle control to the leg. After removing the mass, Dr. Schwartz clipped the ends of the severed nerve to control bleeding and mark the boundaries of the mass. As a result of the severed nerve, Glidden has lost some of the function and strength of the muscle of her right leg. She has undergone a subsequent unsuccessful surgery to repair the nerve. There was testimony at trial that Glidden's long-term prognosis is arthritis and, ultimately, knee replacement surgery.
 
 
 8
 Pathology tests revealed that the mass was a benign myositis ossificans which would not have required removal unless it became painful or began to interfere with Glidden's functioning abilities. Glidden brought claims for negligence and lack of informed consent against Dr. Schwartz, seeking compensation for damage caused to her femoral nerve during the second surgery. After eight days of trial, the jury returned a verdict for Dr. Schwartz on all claims. Glidden filed timely post-trial motions which were denied. This appeal followed.
 
 
 9
 On appeal, Glidden raises three trial errors as grounds for reversal: 1) the trial court erred in prohibiting Glidden's expert, Dr. Varecka, from testifying regarding the standard of care for diagnosis of the mass prior to the first surgery; 2) the trial court erred in permitting Dr. Schwartz to supplement his expert witness endorsements four days before trial despite the magistrate judge's earlier denial of the proposed supplementation; and 3) the trial court erred when it sua sponte chastised Glidden's counsel regarding her cross-examination of one of defendant's experts and effectively prohibited her from questioning a subsequent expert called by defendant regarding his partiality and bias.
 
 
 10
 Dr. Varecka's testimony.
 
 
 11
 Glidden's expert testimony at trial consisted of Dr. Farrar, a general surgeon, and Dr. Varecka, an orthopedic surgeon. Both experts testified that Dr. Schwartz should not have removed the tumor without first determining whether it was cancerous. They opined that an incisional biopsy,[1] rather than an excisional biopsy,[2] was in order and would have prevented Glidden's injury.
 
 
 12
 Dr. Farrar was not critical of Dr. Schwartz's diagnostic techniques prior to the first surgery. However, Glidden sought to qualify Dr. Varecka to offer an opinion regarding the appropriate standard of care for the initial diagnosis of the mass and whether Dr. Schwartz met that standard in Glidden's case. Dr. Schwartz objected to Dr. Varecka's qualifications to offer a standard of care opinion regarding diagnostic techniques on the ground that Dr. Varecka, as an orthopedic surgeon, was not familiar with the diagnostic techniques employed by general surgeons. Following a rather lengthy voir dire, the trial court initially found him qualified to opine about the diagnostic standards to be applied to all of Glidden's care by Dr. Schwartz, but ultimately the court limited Dr. Varecka's testimony to treatment occurring after the first surgery. The basis of the court's ruling was that the standard of care for diagnosis was not the same for orthopedic surgeons as it was for general surgeons.
 
 
 13
 Glidden claims she was prejudiced by the trial court's ruling because she was precluded from presenting evidence of various available tests which Dr. Schwartz should have performed prior to removal to determine whether or not surgery was necessary. Glidden argues that even though the injury to the femoral nerve occurred during the second surgery, the causal chain of negligence was unbroken from the time Dr. Schwartz initially failed to conduct proper diagnostic testing to determine that the mass was not cancerous.
 
 
 14
 We review the trial court's ruling on the admissibility of expert testimony for abuse of discretion. Wheeler v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir.1991) (citations omitted). However, even where a trial judge abused his or her discretion in excluding evidence, the error will not require reversal unless a party's substantial right was affected and, therefore, the error was not harmless. Polys v. Trans-Colorado Airlines, Inc., 941 F.2d 1404, 1407-08 (10th Cir.1991) (citations omitted).
 
 
 15
 In the instant case, we need not decide whether the trial court erred in limiting Dr. Varecka's testimony to procedures performed after the initial exploratory surgery because any possible error was harmless. Dr. Varecka was permitted to testify at length about the diagnostic procedures involving an MRI, a CAT scan, and ultrasound tests which, in Dr. Varecka's opinion, Dr. Schwartz should have performed prior to removing the mass. Dr. Varecka also testified that Dr. Schwartz should have reviewed the ultrasound taken in Minnesota and consulted with the doctor there who first examined Glidden. Dr. Varecka further stated that because Glidden was pain-free and did not present any cancer symptoms, the mass did not pose an immediate threat and, therefore, an incisional biopsy was in order to determine whether the mass was cancerous before the entire mass was removed. Additionally, he testified that Dr. Schwartz should have used the nerve stimulator to determine whether the nerve was a femoral or sensory nerve before severing it. Tr. 269-300.
 
 
 16
 Glidden has made no claim of any damage flowing directly from the first surgery. Glidden's argument essentially boils down to an assertion that she was prejudiced because Dr. Varecka was not allowed to offer his opinion that these tests should have been performed prior to the first surgery. However, nothing in the record indicates that Glidden was prejudiced by the limitation of this evidence to the time frame after the initial surgery, but before the second surgery. Dr. Varecka's testimony was that there was no urgency and that Dr. Schwartz should have postponed the second surgery until the proper diagnostic tests were completed.
 
 
 17
 Actually, a review of the record as a whole indicates that the trial court's ruling had little, if any, practical impact on the testimony offered by Dr. Varecka. A comparison of Glidden's summary of Dr. Varecka's testimony in her expert witness endorsement (the only offer of proof made by Glidden) with Dr. Varecka's trial testimony reveals few differences. Dr. Varecka was essentially permitted to testify about everything in the endorsement except that Dr. Schwartz should not have performed the initial surgery under a local anesthesia because local anesthetic does not adequately enable a surgeon to perform all of the techniques which might be needed for a cancerous mass. Aplt.App. at 15. However, Glidden has not shown how any prejudice resulted from the exclusion of Dr. Varecka's criticism of the use of the local anesthetic during the first surgery, especially where Glidden does not allege any damages flowing from the first surgery.
 
 
 18
 A meticulous review of the trial record discloses that despite the court's ruling, Dr. Varecka ultimately was permitted to testify about the various alternative diagnostic techniques which were available but not used by Dr. Schwartz prior to removal of the mass. We, therefore, conclude that Glidden was not prejudiced by the trial court's ruling with regard to Dr. Varecka's testimony.
 
 
 19
 Supplementation of Dr. Schwartz's expert endorsements.
 
 
 20
 Four days prior to trial, the trial court permitted Dr. Schwartz to supplement his expert witness endorsements of the proposed testimony of Drs. Wotkyns and Gallagher. For reasons not altogether clear in the record, the magistrate judge had denied Schwartz's previous motions to supplement. Glidden contends that the trial court erred in permitting the supplemental endorsements so close to trial and thus, in permitting Drs. Gallagher and Wotkyns to testify on matters beyond the scope of their original endorsements. Specifically, Glidden argues that the original endorsements did not include proposed testimony about: 1) whether an excisional biopsy was necessary to rule out the possibility of cancer; 2) how much of the mass a pathologist would have needed to make a diagnosis; or 3) whether an incisional biopsy would have risked the spread of any cancer.
 
 
 21
 The original endorsements of Drs. Gallagher and Wotkyns included the following statements: "the surgical technique employed by Dr. Schwartz was within the usual, ordinary, accepted and reasonable practices of surgeons under similar circumstances at the time in question" and "pathological analysis of tissue samples or biopsy during the course of the surgery would have been ineffectual and was not indicated." Aplt.App. at 24-26. Moreover, both endorsements included the caveat that they were limited by plaintiff's discovery responses and that defendant reserved the right to offer testimony on additional issues in response to points raised by plaintiff's experts during discovery. The supplemental witness endorsements were an attempt to do just that: formally notify plaintiff of additional testimony on issues raised by plaintiff's experts during discovery.
 
 
 22
 We find no abuse of discretion in the trial court's ruling permitting Schwartz to supplement his endorsements of the testimony of Drs. Wotkyns and Gallagher. Unlike Smith v. Ford Motor Co., 626 F.2d 784, 791-97 (10th Cir.1980) (holding that the trial court abused its discretion in allowing expert testimony on a topic totally outside the scope of the pretrial endorsement), the supplemental endorsements did not introduce an entirely new topic, but simply expanded on topics already mentioned in the original endorsements.
 
 
 23
 Moreover, notwithstanding the magistrate judge's earlier rulings denying Dr. Schwartz's motion to supplement, Glidden can hardly be said to have been surprised or unfairly prejudiced by the opinions of Drs. Gallagher and Wotkyns at issue here. The testimony was in direct contravention of Glidden's two expert witnesses, Drs. Varecka and Farrar, who were permitted to testify at length about Dr. Schwartz's substandard care in removing the entire tumor rather than performing a needle incisional biopsy.
 
 
 24
 Limitation on cross-examination of Dr. Gallagher.
 
 
 25
 During the cross-examination of one of defendant's experts, Dr. Wotkyns, Glidden's counsel elicited testimony that Dr. Wotkyns had previously determined that another patient in a separate case not involving Dr. Schwartz had been a victim of malpractice. Dr. Wotkyns testified that he had chosen not to testify against the offending physicians involved or initiate any disciplinary action against them. Schwartz did not object to counsel's questioning. At some later point in the trial, after the completion of Dr. Wotkyns' cross-examination but before Dr. Gallagher testified, the trial court addressed Glidden's counsel as follows:
 
 
 26
 [T]here were a couple of areas which you covered in Dr. Wotkyns' cross-examination I felt totally inappropriate, especially your use of comments about why he did or didn't testify for plaintiffs in their respective lawsuits and attempting to impeach his credibility on that basis. They were not objected to. I did not address them. I'll not--I'll emphasize, not--tolerate any further such types of cross-examination. Is that clear?
 
 
 27
 Tr. 767-68.
 
 
 28
 Glidden contends that the trial court abused its discretion in effectively preventing her from cross-examining Dr. Gallagher regarding his bias and partiality when the court chastised her counsel regarding the cross-examination of Dr. Wotkyns. Notably, Glidden's counsel completed the cross-examination of Dr. Wotkyns without comment from the court or objection by Dr. Schwartz. Thus, only the cross-examination of Dr. Gallagher is at issue.
 
 
 29
 Glidden did not make a timely objection to the trial court's comment or make an offer of proof sufficient to apprise the trial court of the substance of the excluded testimony. We, therefore, question whether Glidden properly preserved this issue for appeal under the abuse of discretion standard. See Polys v. Trans-Colorado Airlines, 941 F.2d at 1408 (plain error review where party fails to make a proper offer of proof). However, Glidden did raise the issue in her post-trial motion for judgment as a matter of law or a new trial. The trial court considered it and found that there was no prejudice.
 
 
 30
 Unlike in Harbor Ins. Co. v. Schnabel Foundation Co., 946 F.2d 930, 935 (D.C.Cir.1991) (trial court abused its discretion in cutting off cross-examination about the witness' personal knowledge because it was not collateral, irrelevant, or prejudicial and had a direct bearing on the weight to be given the witness' testimony by the jury), the cross examination at issue here was on a collateral matter at best. The trial court is afforded broad discretion in limiting cross examination. Kanatser v. Chrysler Corp., 199 F.2d 610 (10th Cir.1952), cert. denied, 344 U.S. 921 (1953); see also Harbor Ins., 946 F.2d at 935. We are satisfied that reversal is not required under either the plain error or abuse of discretion standard.
 
 
 31
 AFFIRMED.
 
 
 
 *
 The Honorable Earl E. O'Connor, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of the law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 An incisional biopsy involves extraction of a small part of the tumor with a needle
 
 
 [2]
 Excisional biopsy involves removing the entire mass