McCONNELL, Circuit Judge,
concurring in part and dissenting in part.
The majority reverses the district court and overturns an agency decision on the basis of an argument never made by the plaintiff in this case. I therefore respectfully dissent from the portions of the decision reversing and remanding the SITLA, South Manti, and Dark Valley projects.
This case involves six unrelated forest projects in four national forests in the State of Utah. All were challenged by Utah Environmental Congress (UEC) on the ground that the Forest Service had failed to collect adequate data regarding Management Indicator Species (MIS), as required by the 1982 planning regulations and the forest plans. The Forest Service defended on two primary grounds: that the 1982 planning regulations have been superseded by a new requirement that forest managers employ the “best available science” for the purpose of forest management decisions, and, in the alternative, that the projects satisfied the requirements of the 1982 planning regulations. The district court upheld all six projects on the first theory, holding that the “best available science” standard — rather than the 1982 planning regulations — applied. At no point has plaintiff UEC argued that the projects violated the “best available science” standard. Both in district court and *1289 on appeal, UEC’s sole argument has been that the forest managers were required to comply -with the 1982 planning regulations, and did not.
In a careful analysis of the regulatory landscape, the majority concludes that the “best available science” standard applies to the SITLA, South Manti, and Dark Valley projects, but that the forest plans applicable to the Bear Hodges II, East Fork, and White River projects incorporate specific MIS data collection requirements. I agree with this analysis. The majority also concludes that Bear Hodges II, East Fork, and White River project data collection satisfies those requirements. I also agree with those conclusions.[1] Having rejected UEC’s argument that the MIS data requirements of the 1982 planning regulations apply to the SITLA, South Manti, and Dark Valley projects, and given that UEC has not argued that these projects failed to comply with the “best available science” standard, that should be the end of the matter.
Remarkably, however, the majority reverses the district court and overturns these projects on the basis of an argument never made by the plaintiff: “Although we have concluded that the Forest Service was bound to apply the best available science standard in approving the SITLA, South Manti, and Dark Valley projects, it is obvious from the record on appeal that the Forest Service failed to do so.” Maj. Op. at 1287. The majority then proceeds to apply harmless error analysis — not plain error analysis, and not waiver analysis — to the issue, and concludes (without further discussion) that the error was not harmless. .
This violates well-established principles of appellate review. Harmless error analysis is reserved for cases in which the appellant properly objects to an error at trial, the appellate court finds there was error, and the appellee contends that the decision should nonetheless be affirmed. See, e.g. Polys v. Trans-Colorado Airlines, Inc., 941 F.2d 1404, 1409-10 (10th Cir.1991); United States v. Rivera, 900 F.2d 1462, 1469-70 (10th Cir.1990). Here, UEC never objected to the error, if it was error. Thus, at most, we should be applying plain error review. Id. Moreover, in its opening brief to this Court, UEC did not challenge the district court’s conclusion that the disputed projects satisfied the “best available science” standard. UEC argued only that the district court erred in concluding that the “best available science” standard was applicable. UEC’s “Statement of Issues” reads as follows:
1. Did the district court properly apply the correct regulations under the National Forest Management Act?
2. Did the district court properly allow the inclusion of post-decisional population information for various Management Indicator Species (MIS) into the *1290 record and can this post-decisional information be used to support the Forest Service’s decision?
3. Did the Forests have adequate quantitative population trend data for Management Indicator Species (MIS) pursuant to the Forest Plans and 1982 regulations, under the National Forest Management Act (NFMA), that were used by the various Forest Service deci-sionmakers when they made their original decisions approving these projects?
Appellant’s Br. at 7. Conspicuously absent from the Statement of Issues is any argument in the alternative: that even if the district court was correct to apply the “best available science” standard, it nonetheless erred in its application of that standard to this record. Nor can any such argument be teased out of UEC’s opening brief.
It follows that the issue was waived. Dubbs v. Head Start, Inc., 336 F.3d 1194, 1202 n. 4 (10th Cir.2003); Perry v. Woodward, 199 F.3d 1126, 1141 n. 13 (10th Cir.1999). To be sure, “when manifest injustice would otherwise result,” this Court can reach issues that were not specifically raised on appeal. Sussman v. Patterson, 108 F.3d 1206, 1210 (10th Cir.1997) (internal quotation marks omitted). But I can find no precedent justifying reversal of significant agency action, affirmed by the district court, on the basis of a challenge the plaintiff did not make in district court and did not make in this Court. UEC is a sophisticated litigant, specializing in precisely this sort of case. If it chose not to bring a particular legal challenge, we should not comb the record and bring the challenge sua sponte.
The majority takes the district court to task for being “the first to mention the 2000 planning rules and their best available science standard” and for “affirming] the three project approvals based on its own after-the-fact application of the best available science standard.” Maj. Op. at 1287-88. The majority thus characterizes the district court’s approach as a violation of SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). I offer no opinion on whether that characterization is correct, because UEC did not make any such argument (at least not in its opening brief). Indeed, in its opening brief UEC does not cite Chenery Corp. or any of its progeny. UEC crafted its appeal as an argument that the Forest Service remains bound to follow the MIS monitoring standards of the 1982 regulations— not as an argument that the district court affirmed on grounds not supported by the record.
To be sure, the majority quotes two sentences from UEC’s reply brief that can be read to support such an argument. See Maj. Op. at 1288, quoting Aplt. Reply Br. at 7. But “[t]his court does not ordinarily review issues raised for the first time in a reply brief.” Stump v. Gates, 211 F.3d 527, 533 (10th Cir.2000).[2] The majority’s sole quotation from the opening brief on this point, see Maj. Op. at 1287, quoting *1291 Aplt. Br. at 13-14, is not an argument that the district court erred in its manner of application of the “best available science standard”; it is an argument that, because the Forest Service “elected” to employ the 1982 regulations in the project decision, those regulations are legally binding.
The majority’s decision directly conflicts with a recent decision by this Court. In UEC III, this Court rejected the plaintiffs contention that a particular forest project was subject to the 1982 MIS data-eollection rules and instead concluded that the “best available science” standard was applicable. 443 F.3d at 748. As here, UEC in that case never argued that the “best available science” standard was misapplied. Indeed, UEC framed its arguments identically to the arguments in the case before us: that the 1982 regulations controlled, and that the 2000 regulations “could not have replaced [them].” UEC III, Appellant’s Br. at 46. Accordingly, the Court in UEC III held that: “Since UEC does not argue that the Forest Service failed to consider the best available science when it implemented the Seven Mile Project, we find no error in the district court’s order affirming the agency’s decision.” Id. at 749. That decision should control our disposition of this case.
The majority’s attempts to distinguish this case from UEC III are unconvincing; the arguments in the two cases’ opening briefs are, on this issue, substantially identical. The majority notes that, in our case, UEC’s opening brief states that “[ejvidence that the Forests ‘elected’ to apply the 1982 regulations (and never elected to apply the 2000 NFMA regulations) can be found throughout the [administrative] record.” Maj. Op. at 1287 (quoting Appellant’s Br. at 14). In UEC III, the appellants argued that “the district court’s reliance on the transitional 2000 rule conflicts with statements in the project record that state that the 1982 regulations were the applicable regulations.” UEC III, Appellant’s Br. at 47. In UEC III, this Court held that such language could not properly be understood as an argument that the “best available science” standard applies, and I see no reason to come to a different conclusion here.
Nor could Appellants have had any doubt that they were expected to make such an argument explicitly if they wished it to be considered. After UEC III, Appellants were on notice that a direct attack on the application of the “best available science” standard would be required, if that standard was found to be controlling. UEC submitted briefs in this case on June 1, 2006, two months after the UEC III opinion was issued. Their failure to argue, at that point, that the “best available science” standard was incorrectly applied appears to be a tactical litigation choice, and we do not typically reward such choices by making the appellant’s argument for him.
The majority suggests that another recent decision, Ecology Center, Inc. v. United States Forest Serv., 461 F.3d 1183 (10th Cir.2006), points the other way. See Maj. Op. at 1286-87. I cannot agree. To be sure, the Court in Ecology Center remanded a proposed forest project to the agency for application of the “best available science” standard. Ecology Center, 451 F.3d at 1195. But the opinion in that case makes no reference to any failure on the part of the plaintiff to raise the issue, and thus cannot be treated as precedent for disregarding our traditional waiver rules.[3] *1292 UEC III explicitly addresses the plaintiffs failure to raise the issue, and thus provides the precedent we must follow.
Moreover, Ecology Center differs from this case in a fundamental respect. In Ecology Center, the Court reversed the district court’s application of the 1982 planning regulations to the disputed project. The question, then, was whether that error was harmless. In this case, by contrast, we have affirmed the district court’s decision to apply the “best available science” standard to these three projects, and no one has raised any claim that the district court erred in its application of that standard. We need not ask whether the district court’s decision was harmless, because it was not error.
And finally, assuming arguendo that these two precedents directly conflict, we are obliged to follow the ruling of the earlier panel — in this case, UEC III. Hiller v. Oklahoma ex rel. Used Motor Vehicle and Parts Comm’n, 327 F.3d 1247, 1251 (10th Cir.2003) (“To the extent that [two 10th Circuit panel decisions] are in conflict, ... we are obligated to follow the earlier panel decision over the later one.”); see also McMellon v. United States, 387 F.3d 329, 333 (4th Cir.2004) (noting eight circuits that give precedence to the earlier of two conflicting panel decisions).
The majority states that “it is obvious from the record on appeal” that the Forest Service failed to apply the best available science standard. Maj. Op. at 1287. To me, this statement illustrates why we should not go venturing off in pursuit of arguments not made by the parties. The record in this case comprises 46 volumes, with many thousands of pages of text and exhibits. It contains a great deal of scientific detail. I do not know how the agency’s analysis of the various issues stacks up against the “best available science” standard. But neither does the majority. For all we know, the MIS data analyzed in connection with these projects are the best available science. UEC does not argue otherwise. It argues only that the data are deficient under the 1982 planning guidelines, which is a different question. If UEC had argued that the decisions in question were deficient under the “best available science” standard, the Forest Service would have been able to respond, and the district court would have been able to make appropriate findings. That is why we have appellate rules: to ensure that both sides have notice of the disputed issues and an opportunity to weigh in.

. It is therefore unnecessary to consider whether UEC is correct that deficiencies in data collection under the general forest plan require invalidation of specific forest projects. This Court has sometimes assumed that failure to satisfy MIS data collection requirements in the 1982 planning regulations necessitates invalidation of specific forest projects. See Utah Environmental Congress v. Bosworth (UEC III), 443 F.3d 732, 749 (10th Cir.2006) ("In limited circumstances ... we may review a monitoring program to the extent it bears on the approval of a particular project.”) (citing Ecology Center v. U.S. Forest Service, 192 F.3d 922, 926 n. 6 (10th Cir.1999)). The Court has explained that "if a project's approval is conditioned upon the fulfillment of certain monitoring obligations, a plaintiff may bring a claim of deficient monitoring. Without such a relationship, a claim of deficient monitoring is simply not cognizable.” UEC III, 443 F.3d at 750. Because the monitoring performed in connection with the Bear Hodges II, East Fork, and White River projects is not deficient in this case, there is no need to determine whether these projects were conditioned in that way.

. Even the quoted sentences from the reply brief fall short of making the argument the majority wishes to reach. The sentences are in support of this subject heading: "The 1982 NFMA Regulations apply to the actions at hand.” Aplt. Reply Br. at 6. Indeed, UEC candidly acknowledges that "UEC had no basis to challenge the projects under this rule [i.e., the 2000 regulations].” Id. at 7. UEC explains: "Had the [Forest Service's] responses to UEC’s administrative appeal points been premised on the 'best available science’ standard UEC would have had the option to challenge these projects under this rule. But this was not the case.” Id. In other words, UEC's reply brief was not an attempt to introduce a new issue at the reply brief stage; it was an explanation why UEC did not choose to litigate this case under the "best available science” standard, and why we should treat the 1982 regulations as controlling instead.

. The Second Circuit case cited by the majority is not helpful to its position. See Maj. Op. 1287, 1288, citing Forest Watch v. U.S. Forest Service, 410 F.3d 115, 119 (2d Cir.2005). In that case, the plaintiffs explicitly made the Chenery argument in their opening brief, citing circuit precedent rather than Chenery itself. Forest Watch v. U.S. Forest Service, 410 F.3d 115, Appellants’ Br. at 32-33. If UEC *1292 had done so here, we would not have a problem.