Byron JOHNSON, III, and Londa Johnson, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. CIV–93–2074–R.

United States District Court, W.D. Oklahoma.

March 20, 1995.

452

Michael M. Blue, John M. Merritt, Michael T. Rooney, James M. Hays, III, Barbara A. Sanger, George J. Rashid, Merritt & Rooney, Oklahoma City, OK, for Byron Johnson, III.

Michael M. Blue, Merritt & Rooney, Oklahoma City, OK, for Londa Johnson.

Rodney L. Cook, Dan L. Holloway, Page Dobson, B. Kent Watson, Holloway Dobson

Hudson Bachman Alden Jennings Robertson & Holloway, Oklahoma City, OK, Rodney E. Loomer, Sherry A. Rozell, Turner Reid Duncan Loomer & Patton, Springfield, MO, for General Motors Corp.

## MEMORANDUM OPINION AND ORDER

DAVID L. RUSSELL, Chief Judge.

At issue are Defendant, General Motors Corporation's ("Defendant") Motion for Partial Summary Judgment on the issue of punitive damages; and Motion for Partial Summary Judgment on Plaintiffs' "Air Bag" Claim, pursuant to Fed.R.Civ.P. 56(b). This Court's jurisdiction over the instant suit is based upon diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(a)(1), and is undisputed. For the reasons discussed below, the Court denies Defendant's motion for summary judgment on the issue of punitive damages, but grants Defendant's motion as to Plaintiffs Byron Johnson, III's, and Londa Johnson's ("Plaintiffs") "air bag" Claim. See Fed.R.Civ.P. 56(c).

## I. INTRODUCTION AND STATEMENT OF THE CASE.

This is a products liability action. Plaintiff, Byron Johnson, III, was seriously injured when, on January 20, 1993, the 1992 Pontiac Grand Prix (the "Pontiac") which he was driving was struck, virtually "head-on," by another vehicle which had crossed the center line of the highway.[1] Byron Johnson's injuries as a result of the accident included a broken neck, ruptured spleen and fractured pelvis.[2]

On November 26, 1993, Plaintiffs filed this action against Defendant. Plaintiffs' Amended Complaint alleges that the Pontiac was defective and "unreasonably dangerous beyond the contemplation of the average user;"

and that the Pontiac's defects directly contributed to the injuries Plaintiffs' sustained as a result of the January 20, 1993 accident.[3]

The claims asserted by Plaintiffs focus on issues of the Pontiac's crashworthiness. Generally, Plaintiffs contend the Pontiac was defective in its ability to protect passengers from the increased injuries which often result from "second collisions," i.e., impacts between the passenger and the interior parts of the vehicle immediately following the exterior collision.

More specifically, Plaintiffs' Amended Complaint asserts that the interior of the Pontiac was inadequately padded; that the seats were not anchored properly; and that the forward frame of the vehicle was not sufficiently reinforced to withstand the impacts which occur during foreseeable crashes.[4] More important to the issues raised in Defendant's present motions, Plaintiffs contend that the Pontiac was defective because it was not equipped with air bags; and because the seat belt assembly failed to adequately restrain a passenger in the event of a sudden stop or crash.[5]

Plaintiffs assert that Defendant was aware of the hazards alleged to be associated with the Pontiac's seat belt assembly, and that it nevertheless failed to exercise "its post-sale duty to warn of such dangers or to modify its product to eliminate such hazards."[6] Plaintiffs contend these acts of Defendant were the proximate cause of all their injuries. Plaintiffs therefore ask for actual, compensatory and punitive damages on their claims.[7]

In its Answer, Defendant denies all Plaintiffs' claims.[8] On January 11, 1995, Defendant moved for summary judgment on Plaintiffs' punitive damages claim, asserting that Plaintiffs have failed to produce any of the evidence required by Oklahoma law to sup-

---

1. See Amended Complaint at ¶¶ X, XIV.

2. Id. at ¶ XIV.

3. Id. at ¶¶ XVI, XVII. Plaintiff, Londa Johnson brings a loss of consortium claim.

4. Id. at ¶ XVI.

5. Id. at ¶¶ XVI(C)(1), (5), (8–18).

6. Id. at ¶ XVI(H). See also, Brief in Support of Plaintiffs' Response in Opposition to the Motion

for Partial Summary Judgment Filed by Defendant, General Motors Company ("Plaintiffs' First Brief in Opposition") at pp. 3–5.

7. See Amended Complaint at ¶ XIX.

8. See Defendant's Answer, filed on December 20, 1993, and Amended Answer, filed on April 26, 1994.

port such a claim. On January 13, 1995, Defendant moved for judgment on Plaintiffs' "air bag" claim, contending the claim is preempted under the provisions of the Motor Vehicle Safety Act, 49 U.S.C. §§ 30101–30169 (the "Safety Act").[9]

Defendant's motion for summary judgment on Plaintiffs' punitive damages claim raises questions of fact. Defendant's motion on Plaintiffs' air bag claim must be decided as a matter of law. This opinion will address Defendant's motion on the punitive damages claim, first.

## II. OPINION.

### A. Defendant's Motion for Summary Judgment on Plaintiffs' Claim for Punitive Damages.

■ When considering a motion for summary judgment under Fed.R.Civ.P. 56, a court views all the evidence presented by the parties in a light most favorable to the party opposing the motion. See Fed.R.Civ. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). All doubts as to the existence of a genuine issue of material fact in a case must therefore be resolved in favor of the non-movant. Boren v. Southwestern Bell Telephone Co., 933 F.2d 891, 892 (10th Cir. 1991). Only when the court record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, is a grant of summary judgment appropriate. First Nat'l. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968); Fed.R.Civ.P. 56(c). It is because Defendant's Rule 56(b) motion on Plaintiffs' punitive damages claim fails to meet this standard that the motion must be denied.

■ In diversity cases, such as this case, the substantive law of the forum state is customarily applied to determine the claims of the parties. Moore v. Subaru of America, 891 F.2d 1445, 1448 (10th Cir.1989), citing Hackbart v. Cincinnati Bengals, Inc., 601 F.2d 516, 522–23 (10th Cir.), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979); Pound v. Ins. Co. of North America, 439 F.2d 1059, 1062 (10th Cir.1971). Accordingly, the question whether Plaintiffs raise a genuine issue of material fact in response to Defendant's Rule 56(b) motion in this case, must be decided under the laws of the State of Oklahoma.

■ Under Oklahoma law, a plaintiff in a products liability action is entitled to punitive damages under those circumstances where it is demonstrated that the defendant manufacturer acted "with reckless disregard for public safety" in designing, advertising, manufacturing and/or distributing the product at issue. Moore, 891 F.2d at 1452, citing Thiry v. Armstrong World Ind., 661 P.2d 515, 518 (Okla.1983). "Reckless disregard for public safety" is shown when the evidence in a case indicates: (1) that the defendant was aware of a defect in its product, and of the likelihood that user injury would result from the defect; (2) that the defendant was capable either of remedying the defect, or of preventing user injury caused by the defect; and (3) despite this, that the defendant deliberately failed to take any action to remedy the product's defect or to prevent the possibility of user injury. Thiry, 661 P.2d at 517.

In its motion for summary judgment, Defendant appropriately drew this Court's attention to the fact that, except for the bare assertions contained in Plaintiffs' original and amended complaints, the court record was entirely devoid of any evidence which might lead a rational trier of fact to determine Defendant was either aware of any defect in the Pontiac prior to Byron Johnson's accident, or of any likelihood that user injury would result from any defect. See Brief in Support of Defendant's Motion for Partial Summary Judgment at ¶ 1. See also, Fed. R.Civ.P. 56(b); Universal Money Ctrs., Inc. v. AT & T Co., 22 F.3d 1527, 1529 (10th Cir.),

**9.** Originally titled "The National Traffic and Motor Vehicle Safety Act," and codified at 15 U.S.C. §§ 1381–1426, the Safety Act was recently recodified "without substantive changes" at sections 30101–30169 of Title 49 of the United States Code. See Act of July 5, 1994, Pub.L. No. 103–272, § 1(a) (1994) U.S.C.C.A.N. (108 Stat.)

745. Because the provisions of the Safety Act remain virtually unchanged from the version which appeared in Title 15, this Court will cite to the Safety Act as re-codified in this opinion. However, the case authority relied upon by the Court cites to the Safety Act as it appeared in Title 15 of the United States Code.

*cert. denied,* —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994), citing, *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once Defendant made this showing, it was Plaintiffs' burden to come forward with evidence of "specific facts" raising a genuine issue for trial. *See* Fed.R.Civ.P. 56(d); *Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). In this case, Plaintiffs have, albeit minimally, carried this burden.

■ In response to Defendant's motion, Plaintiffs have produced the affidavit of witness, Donald Friedman ("Friedman"). *See* Plaintiff's Exhibit "A." [10] Friedman's foundation testimony, and the information contained in his "Curriculum Vitae," demonstrate that he is qualified to testify as an expert for Plaintiff in this case. *Id. See also,* Fed.R.Evid. 702; *Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Div. of Textron, Inc.,* 805 F.2d 907, 919 (10th Cir.1986).

Significantly, Friedman testifies that, from 1960 to 1968, he was employed in Defendant's Research Laboratories, and "directed research and advanced development of automotive safety equipment and techniques." Plaintiffs' Exhibit "A" at ¶ 1. Since 1986, Friedman testifies that he has researched, designed and developed various systems, including seat belt systems, intended to improve the "crashworthiness" and safety of motor vehicles. *Id.*

Under the Federal Rules of Evidence, because he is qualified as an expert, Friedman's opinions and the inferences Friedman draws from his personal knowledge of relevant facts in the case are admissible into evidence, without further factual foundation or support. Fed.R.Evid. 705. Here, Friedman's testimony is not rebutted by any conflicting data submitted by Defendant. Thus, the evidence presented by Plaintiff through Friedman's testimony stands unchallenged in the court record.

■ Friedman's affidavit contains testimony which this Court finds raises a genuine issue of material fact on the issue of punitive damages in this case. First, Friedman testifies that, prior to the date of Byron Johnson's accident, Defendant was aware that defects in the design of the seat belt assembly installed in the 1992 Pontiac Grand Prix, and other vehicles, had resulted in a "number of serious injuries to occupants of such vehicles." *See* Plaintiffs' Exhibit "A" at ¶ 5. Second, Friedman testifies that Defendant "intentionally failed to remedy such defects in design" when Defendant was both technologically and economically capable of doing so. *Id.* at ¶¶ 6, 7.

■ The evidence Plaintiffs present through Friedman's affidavit raises genuine issues of fact with respect to all the material elements of proof needed to demonstrate entitlement to punitive damages under Oklahoma law. *See Thiry,* 661 P.2d at 517–18. While Friedman's testimony alone, and standing entirely unsupported by factual data, would probably not be sufficient to make Plaintiffs' case at trial,[11] this Court cannot discount the evidentiary value of the testimony without "weighing" Plaintiffs' evidence and testing Friedman's credibility as a witness; a function the Court is not permitted to perform at this stage of the litigation. *See Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212.[12]

10. Plaintiffs' Exhibit "A" is attached to the Brief in Support of Plaintiffs' Response in Opposition to the Motion for Partial Summary Judgment Filed by Defendant, General Motor's Corporation.

11. Under Fed.R.Evid. 705, Friedman is permitted to testify as to his opinions and inferences without first testifying to the underlying facts or data which support such opinions or inferences. Thus, for purposes of Defendant's Rule 56(b) motion here, Friedman's opinions and inferences are admissible, even though Plaintiff does not present any evidence of the facts or data which support them. However, at trial, Defendant is permitted under Rule 705, to cross-examine Friedman as to the factual matters which underlie his opinions and inferences. Thus, at trial, first the Court under Fed.R.Civ.P. 50(a), and then the jury will be permitted to determine how much weight to afford the evidence supplied by Friedman on Plaintiffs' behalf.

12. Under Fed.R.Civ.P. 50(a), however, the Court is permitted to give a judgment as a matter of law to Defendant if, after the close of Plaintiffs' evidence, it appears Friedman's testimony is so incredible or unsupported by underlying data

Accordingly, after considering Friedman's unchallenged testimony, and drawing all inferences in favor of Plaintiff, this Court concludes that a rational juror could decide that Plaintiff is entitled to punitive damages in this case. Defendant's motion for summary judgement must therefore be denied. Fed. R.Civ.P. 56(c); *Cities Service Co.*, 391 U.S. at 289, 88 S.Ct. at 1592.

### B. Defendant's Motion for Summary Judgment on Plaintiffs' Air Bag Claim.

Plaintiffs' Amended Complaint contains the following allegation:

"Plaintiff(s) contend(s) that the vehicle was defective in the absence of adequate air-bags." [13]

Defendant moves for summary judgment on this claim under Fed.R.Civ.P. 56(b) because, Defendant asserts, the claim is pre-empted under the Safety Act.

The parties do not dispute the two (2) material facts which are relevant to the issue of pre-emption in this case. First, the parties agree that no air bags were installed in the Pontiac when it left Defendant's possession, custody and control.[14] Second, the parties agree that the regulations promulgated under the authority of the Safety Act (the "Safety Standards") permitted Defendant to *choose* whether to install air bags in the Pontiac, or to install another type of passen-ger restraint system.[15] Thus, the parties agree that neither the Safety Act, nor the Safety Standards under that Act, *required* Defendant to install air bags in the Pontiac.

Plaintiffs contend, however, that Defendant's compliance with federal Safety Standards relating to air bags does not render Defendant exempt from common law liability under state law, *if* Defendant's failure to install air bags in the Pontiac rendered the vehicle otherwise defective and unreasonably dangerous. *See* 49 U.S.C. § 30103(e). Plaintiffs ground their "air bag" claim upon the assertion that the Safety Standards set *"minimum* requirements," and, therefore, they argue that the lack of air bags in the Pontiac rendered the vehicle defective in this case.[16]

Disagreeing, Defendant contends that the pre-emption clause contained in the Safety Act prohibits this Court from considering Plaintiffs' "no air bag" assertions as a basis for Defendant's possible liability.[17] *See* 49 U.S.C. § 30103(b)(1). For this proposition, Defendant relies upon *Kitts v. General Motors Corp.*, 875 F.2d 787, 789 (10th Cir.1989), *cert. denied*, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990), where the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") held that a plaintiff's products liability action based upon a manufacturer's failure to install air bags in a motor

---

that reasonable minds could not differ and Plaintiffs are not entitled to punitive damages in this case. *See Silkwood v. Kerr–McGee Corp.*, 769 F.2d 1451, 1455 (10th Cir.1985), *cert. denied*, 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 356 (1986); *Taylor v. National Trailer Convoy, Inc.*, 433 F.2d 569, 571–72 (10th Cir.1970).

**13.** Plaintiffs' Amended Complaint at ¶ XVI(C)(1). *See also,* Plaintiffs' Answers to First Interrogatories of Defendant, General Motors Corporation, at p. 9.

**14.** *See* Defendant's "Statement of Material Facts to Which no Genuine Issue Exists," contained in General Motors Corporation's Brief in Support of its Motion for Partial Summary Judgment on Plaintiffs' "Airbag" claim ("Defendant's Supporting Brief"), at ¶ 2; Plaintiffs' Amended Complaint, at ¶ XVI(C)(1).

**15.** The parties agree that the Federal Motor Vehicle Standards (the "Safety Standards") appli-cable to the question of Defendant's choice of passive and active passenger restraint systems for the Pontiac is 49 C.F.R. § 571.208, S4.1.4. *See* "Affidavit of Gerald Cooper" attached as Exhibit "3" to Defendant's Supporting Brief, at ¶ 2; Brief in Support of Plaintiffs' Response in Opposition to the Motion for Partial Summary Judgment on Plaintiffs' "Airbag" Claim filed by Defendant, General Motors Corporation ("Plaintiffs' Response Brief"), at p. 2. While the parties do *not* agree that Defendant complied with all the Safety Standards in its manufacture and design of the seat belt assembly in the Pontiac, they agree that the Safety Standards permitted Defendant to *choose* whether to install an air bag system in the vehicle, or not. Affidavit of Gerald Cooper, Defendant's Supporting Brief, at ¶ 3; Plaintiffs' Response Brief, at p. 2. *See also,* 49 U.S.C. § 30111(a); C.F.R. §§ 571.208, S4.1.4., S4.1.2.1–3.

**16.** *See* Plaintiff's Response Brief, at p. 2.

**17.** *See* Defendant's Supporting Brief at p. 1.

vehicle, where no air bag is required by federal law, is impliedly pre-empted under the Safety Act.

■■■ Because there is no question of fact which is material to Defendant's contention of federal pre-emption on Plaintiff's "air bag" claim, this Court must decide the issue as a matter of law on summary judgment. *See* Fed.R.Civ.P. 56(c); *Pokorny v. Ford Motor Corp.*, 902 F.2d 1116, 1119 (3d Cir.1990), *cert. denied,* 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990). A review of the applicable provisions of the Safety Act, and recent case authority on the issue of pre-emption, compels the Court to agree, in principle, with Defendant's position, and hold Plaintiff's "air bag" claim to be pre-empted under 49 U.S.C. 30103(b)(1). In so holding, however, the Court departs from the reasoning expressed by the Tenth Circuit in *Kitts,* and finds Plaintiffs' "air bag" claim to be expressly, rather than impliedly, pre-empted.[18]

The two statutory provisions which have caused the pre-emption question to arise in this case, and to arise in cases coming before other federal courts, are sections 30103(b)(1) and 30103(e) of Title 49 of the United States Code. Section 30103(b)(1), the "Pre-emption Clause," provides:

> When a motor vehicle safety standard is in effect under this chapter, a State or political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment *only* if the standard *is identical* to the standard prescribed under this chapter....

49 U.S.C. § 30103(b)(1)[19] (emphasis added). Section 30103(e) of the Safety Act, the "Savings Clause," states:

> Compliance with a motor vehicle safety standard prescribed under this chapter

does *not* exempt a person from liability at common law.

49 U.S.C. § 30103(e)[20] (emphasis added). Because it is the responsibility of this Court to interpret these two provisions in a manner which will most fully express Congress' intent in the provisions' enactment, the Court begins its analysis with a review of the provisions' legislative history. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 2036–37, 119 L.Ed.2d 157, 167 (1992).

■■■ The legislative history of the Safety Act indicates that the Pre-emption Clause was enacted by Congress to assure that the "primary responsibility" for regulating the safety features of motor vehicles was to "fall squarely upon the Federal Government." National Transportation and Motor Vehicle Act, Pub.L. No. 89–563, S.Rep. No. 1301, 89th Cong., 2d Sess. *reprinted in* 1966 U.S.C.C.A.N. 2709, 2712. Accordingly, any state standard applicable to a particular aspect of a motor vehicle which differs from the federal standard was intended by Congress to be preempted. *Id.* at p. 2720; H.R.Conf. Rep. No. 1919, 89th Cong., 2d Sess. *reprinted in* 1966 U.S.C.C.A.N. 2709, 2731.

Congress did *not,* however, intend for this pre-emption to "restrict State common law standards of care." S.Rep. No. 1301, *supra,* at 2720. Therefore, Congress included the Savings Clause in the Safety Act to assure that common law claims based upon a manufacturer's failure to act with reasonable care were not exempted. *Id.*

■■■ This Court takes the legislative directives contained in the Pre-emption and Savings Clauses to mean precisely what they say, and, consequently, finds little conflict between them. It appears that Congress intended for federal law to dictate the boundaries of a manufacturer's legal duty with respect to certain aspects of a motor vehicle's

---

**18.** As will be discussed later in this opinion, any application of the doctrine of implied pre-emption was recently limited by the United States Supreme Court to those circumstances where Congress has not included an express pre-emption clause in a statutory scheme. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516–17, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407, 423 (1992).

Since Congress has chosen to include an express pre-emption clause in the Safety Act, this Court's inquiry is limited to the scope of pre-emption as expressly set forth in 49 U.S.C. § 30103(b)(1).

**19.** Formerly found at 15 U.S.C. § 1392(d).

**20.** Formerly found at 15 U.S.C. § 1397(k).

design and manufacture. *See* 49 U.S.C. § 30103(b)(1). State law, however, is permitted to set the standard of care in the exercise of that legal duty. *See* 49 U.S.C. § 30301(e).

■ Accordingly, federal law controls whether a manufacturer, like Defendant, has a legal duty to install an air bag in a vehicle. However, common law may dictate that once the decision in favor of air bag installation is made, the manufacturer exercise reasonable care in such installation. *See Perry v. Mercedes Benz of N.A.,* 957 F.2d 1257, 1264 (5th Cir.1992) (plaintiffs may bring claims for injuries caused by defectively designed and manufactured air bags under 49 U.S.C. § 30103(e)). Thus, the question of pre-emption of Plaintiffs' "air bag" claim in this case should be resolved by determining whether, in permitting Plaintiffs to bring the claim, the Court is likely to create a conflicting legal duty prohibited under section 30103(b)(1), as opposed to a standard of care under state law which is permitted by section 30103(e).

In the instant case, Plaintiffs do not contend Defendant installed an air bag in the Pontiac which was defective. Rather, Plaintiffs assert the Pontiac was defective because Defendant failed to install *any* air bag. To be successful, Plaintiffs' "air bag" claim must be grounded upon a finding by this Court that, under Oklahoma law, Defendant had a legal duty to install an air bag in the Pontiac, and that the legal duty was breached when Defendant exercised its discretion provided by the Safety Standards and chose to install a seat belt assembly and other safety devices in the air bag's place. Therefore, Plaintiffs can only prevail on the "air bag" claim if a legal duty under state law is recognized by this Court which is more stringent that the legal duty relating to air bags imposed under federal law.

The " 'historical police powers of the States [are] not to be superseded by . . . [a] Federal Act unless that [is] the clear and manifest purpose of Congress.' " *Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617, 120 L.Ed.2d at 422, quoting, *Rice v. Santa Fe Elevator Corp.,* 331

U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Looking only to the plain language of the Pre-emption and Savings Clauses, and the legislative history of the Safety Act, it seems clear that Congress intended for such claims as Plaintiff's "air bag" claim to be preempted.

Plaintiffs' "air bag" claim depends upon the creation of a state-imposed, legal standard or duty at common law which directly conflicts with the standard or duty imposed by federal law. This is precisely the kind of circumstance which the Pre-emption Clause contained in the Safety Act was intended to address. Therefore, a finding of express pre-emption of Plaintiffs' "air bag" claim under 49 U.S.C. § 30103(b)(1) seems entirely appropriate. *See e.g., CSX Transportation v. Easterwood,* —— U.S. ——, ——, 113 S.Ct. 1732, 123 L.Ed.2d 387, 396–96 (1993) (common law claims which would establish state law "standards" for railway safety are pre-empted under broad language of pre-emption clause contained in Federal Railroad Safety Act, 45 U.S.C. §§ 421–447; *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383–84, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157, 167–68 (1992) (pre-emption clause's prohibition of state standards relating to air fares pre-empts claim for false advertising of fares under state consumer protection laws); *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 519–20, 112 S.Ct. 2608, 2619, 120 L.Ed.2d 407, 425–27 (1992) (broad language of pre-emption clause under the amended ("1969") version of the Federal Cigarette Labeling and Advertising Act of 1965, 15 U.S.C. §§ 1331–1340, includes standards which may be set by state courts determining common law claims).

However, despite this Court's comfort with the above-stated analysis, other federal courts considering the same issue have had extreme difficulty reaching a similar result. *See e.g., Myrick v. Freuhauf Corp.,* 13 F.3d 1516, 1521 (11th Cir.1994), *cert. granted,* —— U.S. ——, 115 S.Ct. 306, 130 L.Ed.2d 218 (1994) (state law claim based upon failure to install anti-lock brakes *not* expressly pre-empted by Safety Act) [21]; *Wood v. General*

---

**21.** Interestingly, it appears that the Supreme Court has granted certiorari in the only circuit court of appeals case holding there is *no* federal

pre-emption of conflicting common law claims under the Safety Act.

*Motors Corp.*, 865 F.2d 395, 419 (1st Cir. 1988), *cert. denied*, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990) (state law claims based upon failure to install air bags are impliedly, *but not expressly* pre-empted under the Safety Act); *Garrett v. Ford Motor Co.*, 684 F.Supp. 407, 411–2 (D.Md.1987) (*no express pre-emption* of "air bag" claim under Safety Act). For example, in *Kitts v. General Motors, Corp.*, 875 F.2d 787, 789 (10th Cir.1989), the Tenth Circuit held that a plaintiff's state law claims based upon a manufacturer's failure to install air bags in a vehicle were not expressly, *but were impliedly*, pre-empted under the Pre–Emption and Savings Clauses contained in the Safety Act. Thus, the question whether implied or express pre-emption applies to common law claims under the Safety Act has not been uniformly resolved by federal courts.

Nevertheless, whether pre-emption of conflicting common law claims is held to be expressed or implied under the Safety Act, the standing rule of law in the Tenth Circuit is that a plaintiff's state law claim for a manufacturer's failure to install an air bag in a vehicle is pre-empted by federal law. In this Circuit, several post-*Kitts* cases have held in accord with this rule, and with the underlying reasoning which lead to the rule. *See Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1446–47 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177, 1179 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993); *Tammen v. General Motors Corp.*, 857 F.Supp. 788 (D.Kan.1994); *Montag v. Honda Motor Co., Ltd.*, 856 F.Supp. 574, 577–78 (D.Colo.1994). Therefore, this Court finds no case authority which indicates the Tenth Circuit would be inclined to change the rule announced in *Kitts* if confronted with the same issue today.

Despite this, Plaintiffs argue against the Tenth Circuit's rule of pre-emption. In their brief in opposition to Defendant's Rule 56(b) motion on this issue, Plaintiffs correctly point out that the implied pre-emption analysis used by the Tenth Circuit to reach its holding in *Kitts* was recently rejected by the United States Supreme Court. *See Cipollone*, 505 U.S. at 516–17, 112 S.Ct. at 2618, 120 L.Ed.2d at 423 (when Congress has included an express pre-emption clause in an act, a court may not engage in an implied pre-emption analysis to broaden its scope). Despite the existence of recent Tenth Circuit authority favoring the *Kitts* holding, Plaintiffs contend that *Cipollone* effectively overrules *Kitts*.

This Court strongly disagrees. The analysis prescribed by the Supreme Court in *Cipollone*, while admittedly discarding the implied pre-emption approach utilized in *Kitts*, nevertheless *supports* the *Kitts'* holding under the express pre-emption rationale applied by this Court in this opinion.

In *Cipollone*, the Supreme Court considered whether the prohibitions against state created "requirements" and "obligations" contained in Section 5(b) of the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331–1340 (the "Smoking Act"), expressly pre-empts claims for damages brought by plaintiffs under common law. The Supreme Court held common law claims are expressly preempted under the Smoking Act, noting:

> The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules. As we noted in another context, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."

*Cipollone*, 505 U.S. at 537, 112 S.Ct. at 2628–29, 120 L.Ed.2d at 436–37, quoting, *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 781, 3 L.Ed.2d 775 (1959).

Applying *Cipollone* by analogy to the instant case, this Court finds the Safety Act's prohibition against state created "standards" contained in 49 U.S.C. § 30103(b)(1) easily encompasses the kind of common law rules and legal duties which would quickly be established if Oklahoma courts permitted plain-

tiffs to assert products liability claims against motor vehicle manufacturers who failed to install air bags in vehicles because the federal Safety Standards did not require them to do so. Thus, under *Cipollone* and *Kitts,* this Court finds Plaintiffs' "air bag" claims to be expressly pre-empted under the Safety Act. *See Cipollone* 505 U.S. at 523–25, 112 S.Ct. at 2620–21, 120 L.Ed.2d at 426–28; *Kitts,* 875 F.2d at 789. Defendant's motion for partial summary judgment on Plaintiffs' "air bag" claim must therefore be granted. *See* Fed. R.Civ.P. 56(c).

## III. *CONCLUSION.*

Defendant's Motion for Partial Summary Judgment on the issue of punitive damages [22] is **DENIED.**

Defendant's Motion for Partial Summary Judgment on Plaintiffs' "Airbag" Claim [23] is **GRANTED.**

**IT IS SO ORDERED.**

---

**22.** Pleading number 33, filed on January 11, 1995.

**23.** Pleading number 37, filed on January 13, 1995.